Gulf, Colorado & Santa Fe Railway Company v. S. McGowan.

No. 2712.

1. **Limitation—Amendment.**—In a suit for damages from the destruction of growing crops upon a tract of land described by its boundaries an amendment was filed describing subdivisions of the tract and giving the items of damages. *Held*, as the general description of the land upon which the injured crops were growing was sufficient, any amendment curing defective allegations as to the subdivisions is but an amendment of the original cause of action, and to such amendment for the time between the filing of the original and the amendment the plea of limitation would not apply.

2.  **Value of Crops Destroyed.**—The correct mode of ascertaining the value of a crop at the time of its injury or destruction is to prove what that character of crop was worth at or near the place where it was grown when matured, and to make proper estimates and allowances for the contingencies and expenses attending its further cultivation and care.

3.  **Improved Work Upon Railway.**—In a suit for damages from an overflow upon the plaintiff's lands caused by a railway track, it was error to admit evidence against the railway that in reconstructing the track after the overflow the culverts were improved in construction and capacity.

4.  **Same.**—It is the duty of a railway company to supply wants and adopt improvements in its construction as such wants and improvements may be known and their importance become manifest.

5.  **Practice—Charge.**—A charge should not be given unless the testimony requires it for the information of the jury in dealing with the testimony upon the issues.

Appeal from Wharton.    Tried below before Hon. W. H. Burkhart.

A clear statement from the brief of appellant is here given:

Suit was instituted in the District Court of Galveston County and by consent the venue was changed to Fort Bend County. Appellee, the plaintiff below, filed his original petition on March 30, 1886, in which he alleges in substance that plaintiff about May 26, 1884, owned and rented certain lands, among others, to-wit, 112 acres in said county of Fort Bend, being part of what is known as the Yandel Feris place, part and parcel of the old Thompson place, near what is now known and called Thompson's Switch, on the appellant's railroad and adjacent to the point where said railroad crosses the Brazos River in Fort Bend County; that desiring to raise crops on said lands plaintiff, in connection with one George Moore, a tenant, did, in the beginning of the year 1884, plant and cultivate thereon crops of corn, cotton, tomatoes, Irish potatoes, watermelons, and millet; that plaintiff and his said tenant had about May 26, 1884, in cultivation and growing vigorously on said lands named and proportioned crops, to-wit, 50 acres in corn, 10 acres in cotton, 15 acres in Irish potatoes, 15 acres in watermelons, and 12 acres in millet; that in the beginning of the year 1885 plaintiff owned and leased among other lands 145 acres of land in Fort Bend County for the purpose of cultivating crops thereon, and did proceed in connection with his said tenant George Moore to plant and cultivate thereon crops of corn, cotton, and oats; that said 145 acres of land were part and parcel of what is now known as the Yandel Feris place, which is part of the old Thompson place, near Thompson's Switch, etc.; that plaintiff and his said tenant had, on and about June 10, 1885, in cultivation and fine growing condition upon said lands the following crops, to-wit, 100 acres of corn, 40 acres of cotton, and 5 acres of oats; that in both of said years on account of the location of defendant's railroad embankment with respect to the land in question and the failure of the defendant to place sufficient culverts and drains in its road bed, and by the action of the defendant in the construction of its railroad in filling up natural drains

and not providing other means for the drainage of the country, in an overflow of the Brazos River the lands in question were overflowed and the crops were destroyed, to the plaintiff's damage eight thousand dollars.

That afterward said George Moore assigned all of his interest in said crops to the plaintiff, and plaintiff sues for damages by virtue of his own right and by virtue of his said transfer and assignment from his said tenant George Moore. By a first amended original petition, filed on June 19, 1886, appellee made substantially the same allegations as to crops on the Feris place of the year 1884 as were made in the original petition as above stated, but omitted all allegations of crops on that place of the year 1885, and further alleged that in the year 1884 he and his said tenant George Moore had in cultivation on the Brice place, which was a separate and distinct tract of land from the Yandle Feris place, 50 acres of corn, 10 acres of cotton, 12 acres of millet, which were destroyed by the overflow, alleged to have been caused by the presence of the railway embankment, on May 26, 1884; that again in the year 1885 plaintiff and his said tenant George Moore had in cultivation on the Brice farm 100 acres in corn, 40 acres in cotton, 5 acres in oats, which were destroyed in the same manner on or about June 10, 1885. The original petition alleges that all of the crops sued for in both years were on the Yandel Feris farm, while the first amended original petition alleges that a portion of the crops sued for in the year 1884 were on the Yandel Feris place and a portion of the same on the Brice farm, and that in the year 1885 all of the crops sued for were in cultivation on the Brice farm. In the original petition there is no allegation of crops in either year on the Brice farm. The first amended original petition also alleges that George Moore assigned all of his interest in the crops to the plaintiff and plaintiff sued by virtue of his own right and by virtue of the assignment.

By a second amended original petition, filed June 6, 1888, plaintiff alleges that in the year 1884 plaintiff and his tenant George Moore had growing upon the Brice farm fifty acres of corn, ten acres of cotton, and twelve acres of millet; that of said crops Moore was interested as tenant in forty acres of corn and ten acres of cotton, and that the balance of said crops plaintiff owned and cultivated; that on the Yandel Feris place in 1884 plaintiff had in cultivation fifty acres of corn, ten acres of cotton, ten acres of tomatoes, fifteen acres of Irish potatoes, and fifteen acres of watermelons; that in the year 1885 plaintiff and his said tenant George Moore had in cultivation on the Brice place one hundred acres of corn, forty acres of cotton; that said tenant George Moore was interested in forty acres of the corn and thirty acres of the cotton, and plaintiff owned and cultivated the other of said crops. The second amended petition repeats the allegations as to the destruction of the crops and the assignment of Moore's interest to plaintiff, and further alleges that said crops are the

same described and sued for in plaintiff's original and first amended original petitions, but by mistake and clerical error it was alleged that all of said crops were cultivated by plaintiff in connection with his said tenant, whereas, in fact, plaintiff and his said tenant were only interested together as landlord and tenant in about forty acres of corn and ten acres of cotton destroyed on the Brice farm in 1884, and about forty acres of corn and thirty acres of cotton on said farm in 1885, and in the crops destroyed on the Feris place in 1884 said tenant had no interest.

There was a verdict and judgment for plaintiff for $2000 with interest at the rate of eight per cent from June 29, 1885. Motion for new trial was made by defendant and overruled. Defendant appealed.

*J. W. Terry*, for appellant. — 1. The plaintiff in his original and first. amended original petitions having declared on crops cultivated by him jointly with his tenant George Moore, and not having stated in said petitions that any of the crops were cultivated by him individually, the second amended original petition, which for the first time declares on crops. that were owned and cultivated by the plaintiff severally, set up a new cause of action, and such cause of action having accrued more than two years before the filing of the second amended original petition the same was barred by the statute of limitations. Erskine v. Wilson, 20 Texas, 77; S. C., 27 Texas, 117; Haddock v. Crocheron, 32 Texas, 276; Ayres. v. Cayce, 10 Texas, 99, 106; Williams v. Randon, 10 Texas, 74; Kinney v. Lee, 10 Texas, 155; Bingham v. Talbot, 63 Texas, 271; G. C. & S. F. Ry. Co. v. McGown, 65 Texas, 640.

2. It appearing from the plaintiff's original petition that the only crops. therein sued for by him were the crops that were alleged to have been cultivated by himself, in connection with his tenant George Moore, on the Yandel Feris place, and there being no allegation in the original petition as to any crops that were cultivated by the plaintiff, either severally or jointly, on the Brice place in the year 1884, and the first amended original petition, which for the first time in the case alleges the cultivation or destruction of any crops on the Brice place, having been filed on June 19, 1886, more than two years after the alleged destruction of the. crops in 1884, set up a new cause of action as to all the crops on the Brice place in 1884, which was barred on the face of the petition by the statute of limitations.

3. In the determination of a question of negligence the evidence should be confined to facts existing at the time or prior to the transaction complained of. In the construction of its railroad and in providing culverts in the same the appellant could only take into consideration the experience of the past, and it being one of the issues in the case as to whether the overflow was of such extraordinary character that appellant ought not reasonably to have expected it and to have provided against it,

evidence only of previous overflows, frequency of their occurrence, etc., should have been admitted.   The fact that its culverts proved insufficient in the overflow of 1885 was not proper for the consideration of the jury in determining whether the appellant ought to have anticipated and guarded against the overflow.   Further, the admission of such evidence is against public policy, because if the rule be established that such evidence is admissible it will have the tendency to deter the owners of public works from making improvements or alterations in the same which have been suggested by actual occurrences and experience when they know that if the same are made they will be admissible in evidence against them as confessions of previous negligence.   T. & P. Ry. Co. v. Burns, 4 Texas Law Rev., 54–56; Morse v. Railway Co., 30 Minn., 465; Eli v. St. L., etc., Ry. Co., 16 Am. and Eng. R. R. Cases, 342; Hudson v. C. & N. Ry. Co., 8 Am. and Eng. R. R. Cases, 464; Cramer v. Burlington, 49 Ia., 627; Sweetland v. Ill. & M. Tel. Co., 27 Ia., 434; Payne v. T. & B., 9 Hun, 526; Salters v. D., etc., Ry., 3 Hun, 338.

4.   The measure of damages being the value of the crops as they stood in the field, evidence of the market value of corn or potatoes per bushel at Thompson's station in the summer or fall of the year, the crops having been destroyed in the field in the spring, could not have been considered by any one in the spring of the year placing a value upon the crops as they then stood in the field, and was not proper for the consideration of the jury in arriving at the value of the crops as they stood in the field in the spring, and was prejudicial, because it tended to confuse the minds of the jury and draw their attention from the true measure of damages.   T. & S. Ry. v. Schofield, 72 Texas, 496.

*W. B. Denson,* for appellee.— 1.   The second amended petition does not set up a new or different cause of action.   An amendment to a petition may cure and supply insufficient and defective averments setting forth the plaintiff's cause of action, and if it corrects errors, enlarges and presents fully the case and the cause of action which was undertaken to be stated in the original petition, it is not a new but the same cause of action.   28 Texas, 616; 26 Texas, 650; 27 Texas, 659; 28 Texas, 729; 5 Texas, 583; 10 Texas, 155; 18 Texas, 156; 26 Texas, 612; Ball v. Britton, 58 Texas, 60; Jones v. Burgett, 46 Texas, 289; 64 Texas, 533; 66 Texas, 536.

2.   A single statement of the description of land and crops will not preclude all others, but the whole petitions will be examined to see whether the pleader was undertaking to describe the same crops in the two petitions and whether the amended petition was an undertaking to cure a defective averment or description of the crops in the original petition.   The suit is not for damage done to land, but to crops.   Lee v.

Boutwell, 44 Texas, 152; Hollis v. Chapman, 36 Texas, 1; Keys v. Stone, 5 Mass., 391.

3. Railroad companies are required to use engineering skill in the construction of their road beds and culverts through river bottoms where large quantities of water flow, and it is not sufficient to guard adjacent property owners by the simple "experience of the past." "In no case shall any railroad company construct a road bed without first constructing the necessary culverts or sluices, as the natural lay of the land requires, for the necessary drainage thereof." Failing to do this liability is incurred. Enlarging the culverts was a confession of their insufficiency, and there is no rule of law which conceals such confessions. The court properly charged the jury that "if you further believe from the evidence that the railroad embankment was not constructed with prudence and skill so as to avoid occasioning damages, etc., then the plaintiff would be entitled to your verdict," etc. Rev. Stats., art. 4171.

4. The market value of crops is determined by the value at the nearest market place where such articles are bought and sold, at or near the time inquired about.

HENRY, ASSOCIATE JUSTICE.—Appellee filed his original petition on March 30, 1886, to recover from appellant damages for destruction of crops in the years 1884 and 1885 alleged to be caused by an overflow of the Brazos River produced by the negligent construction of defendant's railroad.

The original petition charged that the crops destroyed belonged to and were cultivated by plaintiff and his tenant George Moore, and that he had purchased and received a transfer from said Moore of his interest in the crops and his claim for damages.

In the original petition the crops destroyed in 1884 are described as growing on one hundred and twelve acres in Fort Bend County on part of what is known as the Yandel Feris place, it being part of the old Thompson place, near what is called Thompson's Switch, on the Gulf, Colorado & Santa·Fe Railway, to the west of and adjacent to the point where said railway crosses the Brazos River in Fort Bend County, and situated to the south and west of said river and between it on the north and the road bed of said railway on the south. The western line of said lands between the river above and the road bed below being about one mile, and said river forming the northern and eastern boundary of said land.

The original petition gives substantially the same description of the lands cultivated and overflowed in 1885.

On June 19, 1886, plaintiff filed an amended original petition in which substantially the same description of the overflowed lands and crops were given as in the original petition, except that the original

petition alleged that the whole was part of the Yandel Feris place, while the amended petition charged that part of it was known as the Yandel Feris place and part as the Brice farm.

On a former appeal of the case it was reversed on account of variance between the allegation that all of the crops were owned and cultivated by plaintiff and his tenant George Moore and the evidence showing that George Moore was only plaintiff's tenant of part of the land and that the crops on the other part were exclusively owned and cultivated by plaintiff.

In the District Court plaintiff filed his second amended original petition changing his allegations so as to show how much land was cultivated each year by himself in connection with his tenant and how much exclusively by himself. In other respects the lands and the crops are described substantially as in the first amended petition.

There was a verdict and judgment for plaintiff, from which the defendant appeals and assigns as error:

1. The court erred in overruling the defendant's first special exception to the plaintiff's second amended original petition, said exception being in substance as follows: "For special exception to said petition defendant says that it appears therefrom that the plaintiff's cause of action as to all of the crops described in the petition as having been overflowed on or about May 26, 1884, except the forty acres of corn and ten acres of cotton in which George Moore is alleged to have been interested with the plaintiff, is barred by the statute of limitations, it appearing from the second amended original petition in connection with the original petition and the first amended original petition that this suit as to such crops was not instituted in the two years after the cause of action accrued and not till long after the expiration of said two years, and the defendant here pleads the statute of limitations as to all of such crops of the year 1884, with the exception above stated."

2. The court erred in overruling the second special exception of the defendant to the plaintiff's second amended original petition, which exception is in substance as follows: "For further and special exception to said second amended original petition defendant says that it appears therefrom that the plaintiff's cause of action as to all crops described in said petition as having been overflowed on or about June 10, 1885, is barred by the statute of limitations, except as to the forty acres of corn and thirty acres of cotton in which George Moore is alleged to have been interested with plaintiff, it appearing from said second amended original petition in connection with the original petition and the first amended original petition that as to all of said crops, with the exception above stated, this suit was not instituted within two years after plaintiff's cause of action accrued, and not until a long time after the expiration of said two years."

We do not think these objections are well taken.   It is evident that the lands described and the crops sued for in the original petition are the same that are described and sued for in both amended petitions.

The relation that George Moore bore to the crops and the designation of the lands otherwise sufficiently described as part of the Yandel Feris place in the original petition and parts of the Yandel Feris and Brice places in the amended petitions do not constitute new or different causes of action.   With these allegations entirely omitted the cause of action is sufficiently described to apprise the defendant of what he is called upon to answer to.   The amendments were in the line of precedent and proper.

The crops were destroyed while growing, and before they had matured. As part of his evidence to establish their value at the time and place they were destroyed plaintiff was permitted to prove the value of corn and potatoes of that year's crop in the fall after they had matured and were ready for market.

We think the evidence was properly admitted.   The only correct criterion for ascertaining the value of a growing crop at any period of its existence is to prove what that character of crop was worth at or near the place where it was grown when matured, and to make proper estimates and allowances from ascertained or ascertainable facts for the contingencies and expenses attending its further cultivation and care.

"While the witness Wilson was being examined he was asked by plaintiff's counsel the following question:   'When you rebuilt those culverts that were washed out after the overflow of 1885, what width did you make them?'   To which said question defendant objected, because the same sought to elicit evidence that was irrelevant, incompetent, and illegal, and which would tend to confuse and mislead the jury, and because it was an attempt to make the acts of the defendant after the time of the alleged damage to plaintiff's crops an admission that the culverts were not theretofore sufficient for the purpose for which they were intended, and because the negligence of the defendant was to be judged by the facts as they were before the overflow and not by subsequent experience; which said objection was by the court overruled and the witness was permitted to answer as follows:   'We lengthened some of them· in 1885 I lengthened culvert No. 83 from 42 to 70 feet, and in 1888 it was lengthened to 126 feet, and culvert No. 84 was lengthened the same;' to which said ruling of the court in overruling said objection and admitting said evidence the defendant duly excepted.

"The court also over same objections and exceptions permitted the witness John Mulverhill to testify that after the overflow of 1885 'we did not make any more culverts or put in additional culverts, but we enlarged those that had been there—I suppose about 50 feet, and it may be more.'"

Authorities conflict as to the admissibility of such evidence.

In this court in the case of the Texas & Pacific Railway Company v. Burns it was held that such evidence was improper, Watts, J., saying: "As a general rule, upon principle as well as matter of public policy, such evidence ought not to be admitted. It is a matter of common knowledge that railroad tracks and machinery as well as all other instrumentalities used in operating trains are continually undergoing repairs and being improved. Undoubtedly the public is greatly interested in the continuance of such improvements. Where accidents have directed the attention of the company to a particular portion of the road bed or other instrumentality that by additional safeguards would be rendered more safe, to hold as a general rule that if the desired improvement is made that the company thereby admits that it had been negligent would result in deterring the company from promptly making the improvement. Indeed it would be a harsh rule if every change for the better is to be considered as evidence showing former negligence." 4 Texas Law Rev., 54, 56; Morse v. Railway Co., 30 Minn., 465.

Without undertaking to say that this rule should be applied in all cases we do not hesitate to say that it is a proper one to apply in cases of the character of the one before us.

It was required of the defendant to so construct its road when built as to meet the demands upon it as far as they could be then foreseen and provided for. If it negligently or unskillfully failed to do that, it was liable; but on the other hand if the evidence showed that as the conditions existed and could have been by the exercise of ordinary care and skill ascertained at the time the culverts were constructed they were then made sufficient, and if nothing had occurred between their construction and the date of the injury to plaintiff to develop their insufficiency, the defendant would not be responsible, notwithstanding they were in fact insufficient as then for the first time developed, and notwithstanding such insufficiency in fact was acknowledged by the defendant, as then ascertained, by changing and enlarging them.

Though constructed so carefully originally as to exempt defendant from liability, if subsequent developments proved them insufficient it would then become the duty of defendant to improve them, failing in which the original construction would not be a defense against an injury occurring after the defect became known. The act of improvement or reconstruction we think affects the future and not the past.

It is objected that the court erred in refusing to give the first special charge requested by the defendant, which is in substance as follows: "If you believe from the evidence that only the twenty acres of land on the Brice place, as testified to by the engineer, was overflowed on account of the presence of the railroad, then the plaintiff having failed to show you what crops were growing upon or what damages were done to such crops, you are instructed to find for the defendant;" and in giving to the jury a

charge in lieu of defendant's said special charge, which charge so given is as follows: "If you believe from the evidence that only the twenty acres of land on the Brice place was overflowed, as testified to by the engineer, on account of the presence of the railroad, then if the plaintiff has failed to show what crops were growing thereon or damage done to said crops, you are instructed to reject the same from your calculations if you should find that the plaintiff is entitled to damages on his other allegations of proof."

We do not think the evidence justified any charge on the particular issue. The charge given and the one refused were both incorrect as the case is presented by the record.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Delivered March 19, 1889.