GULF, C. & S. F. RY. CO. v. FELTS.

(Court of Civil Appeals of Texas. Feb. 15, 1911.)

1. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—INSTRUCTIONS.

Error, in an action for overflowing land, in authorizing recovery for a deposit of rock, sand, etc., there being no evidence thereof, was

harmless, where the evidence justified the amount awarded.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4228; Dec. Dig. § 1068.*]

**2. WATERS AND WATER COURSES (§ 178*)— DAMAGES—MEASURE—OVERFLOWING LAND.**

The measure of damages for overflowing land was the difference between the value of the land immediately before and immediately after the overflow, where a restoration of land would have required replacing the soil as well as removing débris.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 251–255; Dec. Dig. § 178;* Damages, Cent. Dig. § 276½.]

**3. WATERS AND WATER COURSES (§ 171*)— OBSTRUCTION—LIABILITY.**

A railway company's failure to leave proper openings for escape of water in constructing its road over a stream is negligence, making it liable for damages to land thereby overflowed.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 216–222; Dec. Dig. § 171.*]

**4. WATERS AND WATER COURSES (§ 179*)— OBSTRUCTION—INSTRUCTIONS.**

An instruction authorizing recovery of the value of improvements on two acres which were washed into a stream through defendant's negligence was not erroneous, as authorizing a recovery for loss of growing crops, where no crops on that land were shown, and it appears that it was occupied by buildings.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 179.*]

**5. TRIAL (§ 260*)—REFUSAL OF INSTRUCTIONS —MATTER COVERED.**

A special charge substantially covered by a general charge is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**6. WATERS AND WATER COURSES (§ 178*)— OVERFLOWING LAND—DAMAGES.**

In an action for overflowing land, it was error to authorize recovery of the difference between the probable yield of crops destroyed and the expense of marketing them, where there was no evidence of such expense.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 251–255; Dec. Dig. § 178;* Damages, Cent. Dig. § 276½.]

**7. WATERS AND WATER COURSES (§ 178*)— OVERFLOWING LANDS — DAMAGES — EVIDENCE.**

That land would not produce a crop on account of the soil being washed away can be considered in estimating the difference in the value of the land just before and after the overflow.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 251–255; Dec. Dig. § 178;* Damages, Cent. Dig. §§ 276½, 282.]

Error from District Court, Bell County; John D. Robinson, Judge.

Action by G. M. Felts against the Gulf, Colorado & Santa Fé Railway Company and another. Judgment for plaintiff, and defendant Railway Company brings error. Reversed and remanded.

Terry, Cavin & Mills and A. H. Culwell, for plaintiff in error. John B. Durrett, for defendant in error.

JENKINS, J. Defendant in error filed this suit in the district court of Bell county

against the Gulf, Colorado & Santa Fé Railway Company and the Belton Light & Power Company for damages by reason of the overflow of his premises, alleged to have been caused by an embankment erected by defendants across the valley of the Leon river. In addition to a general demurrer and general denial, plaintiff in error ·alleged that its roadbed was constructed by skillful engineers with due care, taking into consideration the history of the country, and so as to leave sufficient openings for the passage of all water that might reasonably be expected to flow down said river. It also alleged that the loss, if any, was occasioned by unprecedented rains and floods. By way of cross-bill, plaintiff in error alleged that the injury had been occasioned by an embankment erected by the Belton & Temple Traction Company, and asked that said company ·be made a party defendant, which was done. Judgment was rendered in favor of the defendant in error against the Belton Light & Power Company for $500, and against the Gulf, Colorado & Santa Fé Railway Company for $1,000, with judgment over in favor of plaintiff in error against the Belton & Temple Traction Company for $300. The Gulf, Colorado & Santa Fé Railway Company alone has sued out this writ of error.

The evidence shows that prior to the construction of the Gulf, Colorado & Santa Fé Railway the Belton Light & Power Company had erected a dam some —— feet high across the Leon river a short distance above where the Gulf, Colorado & Santa Fé Railway afterwards crossed said river; that the Gulf, Colorado & Santa Fé Railway Company constructed a dump across the valley of said river on the east side and also on the west side of said river; that there was a large slough on the west side of the river running near to and parallel with the river which was dammed up by the embankment constructed by the plaintiff in error, and the waters caused to flow on the north side of said embankment into the river; that this slough was several miles in length; that when the river was up a portion of the waters of the same flowed through the slough; that the dam of the Power Company backed the waters of the river up and caused them to flow through this slough at a lower stage of water than it otherwise would have done. The Traction Company erected a dump across said valley on the east side a short distance above the Railway Company's embankment. The effect of this dump was to hold the water off of defendant in error's land; but it is claimed that it caused a greater current of water in the river and thereby injured the land of defendant in error.

The evidence shows that defendant in er-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

ror, at the time of the overflow complained of, which was in April, 1908, had about 140 acres of land in cultivation on the east side of the river, principally on the south side of the Railway Company's embankment; that about 60 or 70 acres of this land was overflowed at said time and the crops thereon totally destroyed; that the soil on about 50 acres of this land was washed away, and a large amount of débris was deposited thereon; that this washing of the soil and deposit of débris was caused by the current being turned from the west side of the river by the embankment of the Railway Company, so as to cross the river and wash the land upon the east side. Defendant in error testified that he planted all of the overflowed land in corn after the overflow; that he did not make anything on the 50 acres where the soil was washed away; that upon the remainder of said overflowed land he made 40 bushels of corn to the acre, which was worth 50 cents per bushel in the field at gathering time; that he cultivated the 50 acres upon which he made nothing in the same manner that he did the land upon which he made 40 bushels to the acre. The evidence also shows that about 2 acres of the land belonging to defendant in error above the railway embankment and opposite the dam was washed away, including his barns and lots and some trees growing thereon. Such additional facts as are necessary for a proper understanding of this case will be recited in discussing the various assignments herein.

1. Plaintiff in error complains of the seventh paragraph of the court's charge, which directs the jury in considering the damages, if any, which they will assess, to take into consideration the destruction of the growing crops, plaintiff's land which was caused to cave into the river and wash away, and the deposit of rock, sand, and débris upon plaintiff's land. The alleged vice in this charge is: (1) That there was no evidence that any rock and sand was deposited upon the overflowed land. In this charge the court evidently copied from the allegations in plaintiff's petition. The witnesses say that débris was deposited upon the land, but make no specific mention of rock or sand. We do not think, however, that this charge could have operated to the injury of plaintiff in error, for the reason that, if there was no other error committed upon the trial of this cause, the evidence was sufficient to justify the amount of the verdict, independent of whether or not any rock or sand was deposited on the land; and, as there was no evidence of such rock or sand being deposited, it is not likely that the jury allowed any damages for such deposit. (2) Plaintiff in error also complains as to the measure of damages in this portion of the charge, to wit, the difference between the value of the

135 S.W.—46

land immediately before and immediately after the overflow. It asserts that the measure of damages as to the land was what it would reasonably have cost to remove the rock and other débris deposited by the overflow. If such débris could easily have been removed and the land restored to its former condition, this might be a proper method of arriving at the difference in the value of the land before and after the overflow; but we think the measure of damages submitted by the court as to the injury to the land is the proper one. In this particular case, to have restored the land to its former condition would not only have required the removal of the débris, but the replacing of the soil which was washed from the 50 acres of land.

2. In several assignments plaintiff in error complains of the charge of the court to the effect that the Railway Company would be responsible for the damages if it did not provide proper openings for the escape of the waters of the river; the proposition being that, if the dump was not negligently constructed, the Railway Company would not be responsible. Aside from the issue as to unprecedented overflow, the company is required by statute to leave proper openings for the escape of the water, and its failure to do so will be negligence as matter of law, and we do not think there was any error in the charge of the court as to this matter. The court properly submitted the issue as to whether or not sufficient openings were left for the escape of the overflow water, and also as to the proximate cause of the injury, placing the responsibility upon each of the defendants in the court below for the injury caused by them respectively; and also such injury, if any, as was caused by the concurrent acts, if any, of the defendants.

3. Plaintiff in error complains of the charge of the court with reference to the land, about two acres, which was totally destroyed by the caving in of the banks, in that said charge instructed the jury to find for the value of the improvements on said land; the complaint as to said charge being that the jury probably considered growing crops on the same as improvements, and that there was no proper evidence by which they could fix the value of growing crops. The evidence does not show that there were any growing crops on the land which caved in, but that the barns and lots of defendant in error were situated thereon. Under such circumstances, it is not probable that the jury understood by "improvements" on said land to be meant growing crops.

4. Plaintiff in error assigns error on the failure of the court to give a number of special charges which were in substance included in the charges given. Among these was the issue, which was raised by the evidence, as to whether or not the overflow in April, 1908, was unprecedented. It is not er-

ror for the court to refuse a special charge where the same is given, in substance, in the general charge.

5. Plaintiff in error's third assignment of error is as follows: "The court erred in the fourteenth paragraph of its charge to the jury, which is as follows: 'If you find for the plaintiff and find that his growing crops of corn, cotton, and grain were destroyed, as alleged, the measure of his damage would be the difference between the probable yield of said crops in the market, and the expense of cultivating, growing, preparing, and placing the same in the market.'" The objection to this charge is that there was no evidence as to the expense of cultivating, growing, and preparing for the market the crop which was destroyed by the overflow. Plaintiff in error also by its eleventh assignment of error complains of the failure of the court to give the following requested charge: "The jury are charged that the 50 acres of corn and cotton described by plaintiff as about 16½ acres of cotton, most of which was up, and 33½ acres of corn, all of which was up, and all of which plaintiff testified was destroyed, cannot be considered by you in assessing his damages, if you find for him, nor can you consider any damages for the 50 acres of oats destroyed, as there has been adduced no evidence showing the market value thereof at the time of the destruction thereof, nor any evidence tending to show the value of the seed planted, the cost of labor in preparing the land, planting and cultivating the same up to the date of the destruction thereof, nor what it would have cost to cultivate, harvest and place the same in the market, if it had not been destroyed." The evidence in this regard is that the crops mentioned in the requested charge were destroyed by the overflow; that the defendant in error, after the overflow, replanted all of his overflowed land in corn; and that he made a satisfactory crop upon the same, and, so far as the evidence shows, as much profit thereon as he would have made but for the overflow, with the exception of said 50 acres. Plaintiff testified as to this 50 acres that the soil was washed off of it, and that he planted this land in corn and cultivated it just as he did the remainder of his land upon which he made 40 bushels of corn to the acre, and that he made nothing on this 50 acres. There was no evidence as to the cost of cultivating, maturing, and marketing the crop which he raised upon his land. Defendant in error contends that plaintiff in error was liable for the value of the corn crop which he failed to grow upon this 50 acres of land. Even if this were true, the evidence shows that such value would have been $20 per acre for the corn in the field, but does not show the cost of planting or cultivating said crop. However, this is not a suit to recover for the value of the crop which he planted after the overflow, and which failed to mature on account of the soil's being washed away, but it is a suit for damages to the growing crop which was destroyed. There is no evidence at all as to what would have been the value of the crop which was destroyed; nor what it would have cost to bring the same to maturity and market it. We remember to have read about a suit brought by Bill Arp against a party "for one well which he did not dig"; but, as that case is not officially reported, we know of no precedent which would justify damages for the value of a crop which the defendant did not destroy. I. & G. N. R. R. Co. v. Pape, 73 Tex. 503, 11 S. W. 526; Texas Company v. Lacour, 122 S. W. 424; Railway Co. v. McGowan, 73 Tex. 362, 11 S. W. 336; Railway Co. v. Borsky, 2 Tex. Civ. App. 545, 21 S. W. 1012; City of Paris v. Tucker, 93 S. W. 233. If the land was in such condition, by reason of the soil's being washed away, that it would not produce a crop, this was a proper matter to be considered in estimating the difference in the value of the land just before and just after the overflow. The assignments of plaintiff in error with reference to this matter are well taken; and for the reason that the court erred in submitting the measure of damages for growing crops, about which the evidence was wholly insufficient, and erred in refusing to give the special charge requested in reference to this matter, this case must be reversed and remanded.

Reversed and remanded.