WINNSBORO COTTON OIL CO. v. CARSON. (No. 7438.)

(Court of Civil Appeals of Texas. Dallas. April 29, 1916.)

1. APPEAL AND ERROR ☞797(1)—MOTION TO DISMISS—WAIVER—RULE OF COURT.

Under Rule 8 for Courts of Civil Appeals (142 S. W. xi), providing that all motions relating to informalities in appeals thereto shall be waived unless filed and entered upon the motion docket within 30 days after the filing of the transcript, a motion to dismiss on the ground of the appellant's failure to file its motion for new trial in the court below within the statutory 2 days after verdict raised an informality, as distinguished from a jurisdictional question, and, when not filed within the 30 days after the filing of transcript, waived such question.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3149, 3150; Dec. Dig. ☞ 797(1).]

2. APPEAL AND ERROR ☞797(1)—MOTION FOR NEW TRIAL—RECORD.

The failure to file the motion for a new trial within 2 days being an informality relating to the manner of appeal, which was waived by not filing the motion to dismiss the appeal within 30 days after the filing of the transcript, the motion for a new trial, even if filed too late, is in the record for consideration for all purposes.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3149, 3150; Dec. Dig. ☞ 797(1).]

3. APPEAL AND ERROR ☞722(1)—MOTION FOR NEW TRIAL—ASSIGNMENT OF ERRORS—SUFFICIENCY.

A motion for a new trial attacking both the verdict and the judgment on the ground of the insufficiency of the evidence, or that the undisputed evidence was at variance with the verdict, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 1612, constituting the motion for new trial the assignments of error, repeated in an assignment of error that the verdict should be set aside because without evidence to support it, sufficiently raised such issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2990, 2994–2996; Dec. Dig. ☞722(1).]

4. MASTER AND SERVANT ☞233(4)—MASTER'S LIABILITY—"VICE PRINCIPAL."

A servant who, in addition to his authority to direct and supervise the work of those under him, has authority to hire and discharge such subordinate servants, becomes a "vice principal."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 704; Dec. Dig. ☞233(4).

For other definitions, see Words and Phrases, First and Second Series, Vice Principal.]

5. MASTER AND SERVANT ☞281(6)—ACTION FOR INJURY — SUFFICIENCY OF EVIDENCE — VICE PRINCIPAL.

In a servant's action for personal injury wherein defendant claimed that at the time of his injury he was a vice principal, verdict for plaintiff *held* against the weight of the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 990; Dec. Dig. ☞281(6).]

6. MASTER AND SERVANT ☞229—ACTION FOR INJURY—CONTRIBUTORY NEGLIGENCE.

A servant is required to exercise that degree of care in the performance of his duties which persons of ordinary prudence exercise to the same end when similarly engaged.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 674, 683; Dec. Dig. ☞229.]

7. MASTER AND SERVANT ☞289(28)—ACTION FOR INJURY—QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

In a servant's action for injury to his hand when pulling the lever which directed the hulls from a conveyor without the use of a lantern, contributory negligence *held* a question for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1120; Dec. Dig. ☞289(28).]

8. MASTER AND SERVANT ☞288(2)—ACTION FOR INJURY—ASSUMPTION OF RISK—QUESTION FOR JURY.

On evidence in such action, *held*, that the plaintiff's assumption of risk was properly referred to the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ☞288(2).]

9. MASTER AND SERVANT ☞203(1)—MASTER'S LIABILITY—"ASSUMED RISK."

"Assumed risk" is the voluntary exposure of a servant without remonstrance to the ordinary hazards of the particular use of machinery or appliances claimed by him to be defective or unfit, but of which conditions or dangers he knew or must necessarily have acquired knowledge in the ordinary pursuit of his duties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–540, 542, 543; Dec. Dig. ☞203(1).

For other definitions, see Words and Phrases, First and Second Series, Assumption of Risk.]

10. MASTER AND SERVANT ☞235(7)—SAFE PLACE TO WORK—INSPECTION.

A servant has no duty of inspection, but in the pursuit of his work may assume that master has done his duty and provided a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 714; Dec. Dig. ☞235(7).]

11. TRIAL ☞219—INSTRUCTIONS—REFUSAL OF REQUEST.

In a servant's action for personal injury, where the defense was that he was a vice principal, and where the court, submitting the case upon special issues, propounded to the jury questions relating to the duties and authority of the plaintiff under the terms of his employment raising the question of law as to whether he be a vice principal, the refusal of the defendant's specially requested charge defining a vice principal was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 489; Dec. Dig. ☞219.]

12. MASTER AND SERVANT ☞270(7)—ACTION FOR INJURY — EVIDENCE — SUBSEQUENT REPAIR OF APPLIANCES.

Evidence of changes or repairs made subsequently to the injury, or as to subsequent precautions taken to prevent recurrence of injury, are not admissible as showing negligence, or as amounting to an admission of negligence, as the effect of admitting such evidence would be to inform a defendant that changes or repairs would be under a penalty; but, as an exception to the rule, such evidence is admissible when in proving the conditions existing at the time of the injury it is necessary to show that subsequent repairs were made, or to prove subsequent repairs in rebuttal of any claim that the condition which brought about the injury could not be improved.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 918; Dec. Dig. ☞270(7).]

13. MASTER AND SERVANT ☞270(6)—INJURY TO SERVANT—APPLIANCES—CONDITION SUBSEQUENT TO INJURY.

In a servant's action for injury while operating a lever of a hull conveyor when his hand caught in an exposed cogwheel, his testimony that he examined the box head nine days after he was injured, and that the bolts which fastened it were then loose, and that it was in apparently the same condition as when he was injured, was admissible as showing its condition at the time of the injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 917; Dec. Dig. ☞270(6).]

14. MASTER AND SERVANT ☞270(5)—INJURY TO SERVANT—CONDITION OF APPLIANCES—EXAMINATION BEFORE INJURY.

In such case evidence of a witness who examined the box head three months prior to the injury was admissible if it appeared that there had been no change in the condition of the machinery since the accident; the lapse of time being a matter within the discretion of the trial judge.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 916; Dec. Dig. ☞270(5).]

15. EVIDENCE ☞213(1) — ADMISSIONS — ATTEMPTED COMPROMISE.

In a servant's action for personal injury, his unaccepted offer to compromise his claim was properly withdrawn from the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 745, 748–750; Dec. Dig. ☞213(1).]

**16. TRIAL ☞253(9)—INSTRUCTION—EXCLUDING MATTERS FROM JURY.**

In a servant's action for injury, where defendant set up an adjustment of the claim and offered testimony in support thereof, and where it further appeared that plaintiff's offer to compromise had not been accepted, an instruction eliminating the attempted compromise, and also charging not to consider any other amount offered plaintiff, or that the defendant agreed to pay him any amount in settlement, was misleading and erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 620; Dec. Dig. ☞253(9).]

**17. DAMAGES ☞64 — PERSONAL INJURY — RIGHT TO RECOVER—INSURANCE.**

The fact that a servant was insured against accident, could not affect his right to recover for personal injury, if otherwise entitled to do so.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 113; Dec. Dig. ☞64.]

**18. EVIDENCE ☞215(1)—ADMISSIONS—WRITINGS.**

In a servant's action for injury, where defendant claimed that plaintiff was a vice principal, declarations contained in plaintiff's proof made to his insurer might be considered on the issue of the capacity in which he was employed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 754; Dec. Dig. ☞215(1).]

**19. TRIAL ☞121(2)—CONDUCT OF COUNSEL—ARGUMENT.**

Counsel should be allowed the most liberal freedom of speech, and may discuss all facts in evidence or admitted by the pleading, may arraign the conduct of the parties and attack the credibility of the witnesses, may discuss the failure of parties to the suit to testify or to call known favorable witnesses, and may draw conclusions from the evidence and give his opinion thereon, but the court has the right to require him to observe a proper limit in the presentation of his case, and he may not state facts not supported by or inferable from the evidence, or discuss excluded or inadmissible evidence or facts based on his knowledge only.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 296; Dec. Dig. ☞121(2).]

**20. TRIAL ☞108½—CONDUCT OF COUNSEL—EXAMINATION OF JURY—"HEELER."**

In a servant's action for personal injury while in the employ of defendant oil company, it was improper for counsel for plaintiff in the preliminary examination of the jury to ask whether any "heeler" of the defendant's had discussed the case with them, as the term is opprobious, and means in common and general acceptation a person who is the lackey or hanger-on of another, and in a political sense an unscrupulous and disreputable person.

[Ed. Note.—For other cases, see Trial, Dec. Dig. ☞108½.]

Appeal from District Court, Wood County; M. B. Briggs, Judge.

Action by Homer W. Carson against the Winnsboro Cotton Oil Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded for a new trial.

Loe & Lomax and W. D. Smith, all of Ft. Worth, and M. D. Carlock, of Winnsboro, for appellant. J. H. Beavers, of Winnsboro, J. M. Burford, of Mt. Pleasant, and W. G. Russell, of Winnsboro, for appellee.

RASBURY, J. Appellee sued appellant, a private corporation, for damages for personal injuries alleged to have been negligently inflicted by appellant. Appellant conceded the injury, but alleged that it was due to appellee's contributory negligence, or was the result of the risk assumed by appellee as an employé of appellant; also that appellee was the representative of appellant in control and management at the time he was injured, or its vice principal, and for that reason not entitled to recover; and, finally, that an adjustment of the claim for injuries was had between the parties. The case was submitted to a jury upon special issues of fact, and upon the answers of the jury thereto judgment was rendered by the court for appellee for $3,000. From such judgment, this appeal is prosecuted.

From the evidence contained in the respective briefs of the parties we find that appellant operates at Winnsboro a combined cotton oil mill, cotton gin, and electric light plant. Appellee was its employé; the capacity in which he was employed being a disputed question at trial. Appellant contended that he was a vice principal; appellee that he was an ordinary employé. A part of appellant's gin equipment consisted of a hull conveyor, which conveyed the hulls either to the hullhouse or to another point where they could be deposited in cars. The conveyor was of simple construction, consisting of a spiral auger incased in a wooden box running horizontally from the outside west wall through a portion of the building to destination. The covering for the end of the box designated by the witnesses as the box head was of iron, bolted onto the wooden portion of the box, and consisted, in addition to a piece of iron of the dimensions of the end of the wooden box, of bearings for a countershaft which operated or turned the auger by cogwheels attached to the countershaft. The entire box head, consisting of the bearings, shaft, and cogwheels, was exposed on the outside wall, and was about 12 feet from the ground. Immediately beneath the box head was a wooden lever, which when pulled in one direction opened a valve and diverted the hulls to the hullhouse, and when pulled in the opposite direction diverted the hulls to the cars, and which was operated by hand. At the time appellee received his injuries he was directed by appellee's superintendent to so adjust the lever that a car might be loaded with hulls. In order to reach the lever it was necessary to go upon a "runway," which consisted of a plank 11 inches wide, 1½ inches thick, laid upon beams at each end, and reached from the ground by ladder. Appellee got upon the runway and walked thereon to the lever, feeling for same with his hands, it being dark, and that side of the building being unlighted. He finally got his hand upon it and gave it a pull. The lever failing to work or slide, he gave another pull, which started the runway or board upon which he stood to swaying, causing him to

lose his balance and to throw out his hands involuntarily and clutch the cogwheels, which injured his left hand so seriously that it became necessary to amputate his thumb, first and second fingers, and nearly half of the body of the hand. Appellee claimed, and the evidence adduced in his behalf tended to show, that the wooden conveyor box onto which the iron box head had been bolted was deteriorated and rotted, and as a result the box head had worked loose and was resting upon the lever, preventing it from sliding in the usual and normal manner, and but for such condition the injuries would not have resulted, and the jury so found. The foregoing are the salient facts developed in the case and which support the verdict of the jury. There was, of course, another theory of the case supported by the evidence tendered by appellant, but, since the jury has properly solved the conflict, we will not relate the facts deducible from the evidence offered by appellant. We will, however, at another place in this opinion discuss the sufficiency of the evidence to sustain the finding of a certain fact by the jury and put in issue by appellant.

[1] Prior to any consideration of the issues advanced under the assignments contained in appellant's brief we are met in limine by a motion to dismiss the appeal, and in the alternative to strike out every assignment of error presented by the brief of appellant. The ground urged as basis for both issues is the failure of appellant to file its motion for new trial in the court below within the statutory 2 days after verdict. Appellant's counter proposition is that the motion comes too late. Rule 8 promulgated by the Supreme Court for observance by the Courts of Civil Appeals (142 S. W. xi) provides, in substance, that all motions relating to informalities in appeals to said courts shall be waived unless filed and entered upon the motion docket within 30 days after the filing of the transcript. The transcript in the instant case was filed in this court March 30, 1915. The motion to dismiss is contained in appellee's brief, which was filed November 4, 1915, and, if such presentation can be considered a motion entered upon the docket by the clerk, it nevertheless comes too late, since it is clear that the issues raised in the motion are informalities as distinguished from jurisdictional questions. Conn v. Houston Oil Co., 171 S. W. 520; Tyler v. Sowders, 172 S. W. 205; McLane v. Haydon, 178 S. W. 1197.

[2, 3] Appellee also in limine objects to any consideration of the first, second, and third assignments of error on the ground that there is in the record "no" motion attacking the verdict of the jury. This objection, we assume, is based upon the claim that, the motion having been filed after the expiration of the statutory 2-day period, the verdict would stand as unchallenged, because the motion could not be considered in support of the assignments. We have said that the matter of when the motion for new trial was filed was an informality relating to the manner of appeal, and was waived in the absence of motion attacking same filed within 30 days after filing transcript in this court. Hence, having waived the time of filing motion for new trial, even if filed too late in the court below, which we do not determine, the same is in the record for consideration for all purposes. If, on the contrary, it is meant that the motion, if considered, does not attack the verdict of the jury, we conclude it is sufficient, since it, in substance, attacks both the verdict and the judgment on the ground of the insufficiency of the evidence; or, to put it more nearly in the language of the motion, on the ground that the undisputed evidence was at variance with the findings of the jury, which is substantially the same thing. The precise ruling in Scott v. Bank, 66 S. W. 485, cited in support of the motion, was that it was not only necessary to urge in the motion for new trial the insufficiency of the evidence to support the findings of the jury, but that, when such motion was overruled, it was necessary in order to review such action to assign as error the action of the court in overruling the motion for new trial. The motion for new trial now constitutes the assignments of error. Article 1612, Vernon's Sayles' Stats. Hence a complaint in the motion repeated in the assignment of error that the verdict should be set aside because without evidence to support it sufficiently raises the issue. Missouri, O. & G. Ry. Co. of Texas v. Black, 176 S. W. 755. In the case cited writ of error was recently denied by our Supreme Court.

We now come to a consideration of the appeal upon its merits, and in that consideration we will not attempt to discuss each assignment seriatum, but, instead, will discuss the issues as such.

[4, 5] The first issue in importance is the claim that appellee was appellant's agent or vice principal, to whom was delegated the supervision and management of the mill, including the repair of all machinery at the time he was injured, and that the negligence which resulted in his injury was his own for which appellant was not liable in law. This issue was submitted to the jury, and the jury found that appellant was not a vice principal. This finding of the jury is attacked on the ground that it is without support in the evidence, which requires a review of the testimony by us on the issue so raised. We will not recite the evidence of the witnesses in hæc verba, but will state in our own language the facts deducible therefrom. According to the testimony of Homer W. Carson, appellee, he had been employed at the mill in some capacity since 1901, and was well acquainted with the premises, and efficient and experienced in all departments of the mill, gin, and electric light plant. He was "night foreman,"

and was in that capacity in charge of the mill, gin, and electric light plant, and at the time of the accident had been for two seasons. His duties were to go from place to place in the mill and see that the employés, consisting of nine or ten men, were at their proper places and properly performing their work and to keep their time; also it was his duty to shift the lever, which he was doing at the time he was injured; to "sometimes" make necessary repairs to the machinery or cease operating it; to repair a broken belt or similar mishap to the electric light plant; to keep the presses going. He was not a common laborer, but did at times perform such work as shoveling cotton seed and hulls. The other employés were not compelled to obey appellee's orders or quit, although appellee required them to obey his orders. It was appellee's duty, under instructions of the day superintendent, when the night crew was short or an extra man was needed, to employ one. The wage to be paid in case of vacancy was fixed by the day superintendent, but not where extra men were needed at night. Appellee did employ one hand while night foreman. He did employ and discharge help under the instructions of his employers before Mr. Leonard became day superintendent, but did not recall discharging any since. All employés other than appellee were employed and paid by the day superintendent. Appellee was employed and paid by the month, and worked regularly the full year. Between seasons he would be engaged in repairing the mill preparatory for the succeeding season, or, if not that, would be doing line work for the electrical department, putting up new lines, and installing electric lights in the houses of patrons. Appellee when injured was insured against accident, and in the written and sworn proof of his injuries made for the insurance company stated that he was "night superintendent at the oil mill." His explanation of that statement was that he told the agent what his duties were (being those we have detailed), and that the agent wrote it in the proof as it appeared.

Walter Leonard, for appellant, testified, in substance, that he was and had been in the employment of appellant about 3½ years and was its superintendent, and that appellee was night foreman of the mill, and his duties were to supervise the mill and men, discharge employés if they were not performing their duties, and employ others to fill vacancies. He could not recall the names of any discharged, but appellee had told him of discharging help. The employés reported to appellee for work or if they had trouble with the machinery. It was his duty to repair machinery, and he exercised his discretion in that particular without reporting to witness who was superior in authority.

Clarence Carlock, witness for appellant, in substance, testified that he was manager of appellant, and had been for four years. His duties are principally in the office, looking after the business side of the concern. The mill is operated night and day, and there is a day and a night superintendent, due to the fact that there is a day and night shift of employés. The day superintendent is more experienced than the night superintendent and outranks him in authority, and would be the one in authority even at night if present; otherwise at night the former would be in authority. Ordinarily the day superintendent leaves at 7 o'clock, leaving the night superintendent in charge, whereupon he assumes full and complete charge of the mill. At the time appellee was injured Leonard was day and appellee night superintendent; both being employed by the witness. Appellee was employed by the year, receiving $60 per month for six months and $50 per month for six months, and, in addition, was furnished a residence belonging to appellant and lights. Leonard, Carson and the office force were the only salaried employés; the common laborers being paid by the day. Carson received his salary, notwithstanding the loss of a few days, while the laborers were paid according to the hours they actually labored. When witness and Leonard left the mill appellee was in charge and had authority to employ and discharge men and exercised that authority. He discharged Gene Christian, a negro employé, who resented Carson's calling his brother to task for being late, and hired another in his stead. He did not ask witness' consent to do so, nor did he exceed his authority. Appellee was authorized to repair the machinery which injured him or to authorize another to do it. He could have sent any employé to open the valve which he opened, and it was the duty of the one so instructed to obey appellee. He had been instructed to put up the necessary lights about the mill and exercised that authority according to his judgment. Appellee was instructed to watch all machinery day and night and keep it in repair. Witness could not recall specifically the time of such instructions, but did recall an occasion when appellee, without specific instructions, placed additional lights about the building, and thereafter directed witness' attention thereto.

Whether the facts related show appellee to have been the vice principal of appellant at the time he was injured is to be determined by the rule in this state as to what facts in law will establish that relation. That rule is well settled, and was succinctly restated in Hugo, Schmeltzer & Co. v. Paiz, 104 Tex. 563, 141 S. W. 518, to be that, if a given servant, in addition to his authority to direct and supervise the work of those under him, has authority to hire and discharge such subordinate servants, he becomes a vice principal. The question then is: Did appellee, according to the testimony, come within the rule? We have stated the facts deducible from the evidence fairly and fully in this opinion, and they speak for themselves;

and, while we will not disturb the verdict of the jury, save in strict compliance with those rules authorizing us to do so, we feel that in the instant case, even if it can be said that appellee's testimony can be held to sustain the finding of the jury, about which we have grave doubts, at the same time it is so manifestly against the weight and preponderance of the other testimony that it presents an occasion for us to exercise the authority conferred in such instance and reverse the case on that ground.

[6, 7] In view of another trial it is necessary to consider the contention that appellee was guilty of contributory negligence as matter of law in going upon the runway in the dark without a lantern, which the evidence develops was at hand for the use of employés, in making a second pull at the lever when it failed to work when pulled the first time, and in going upon the runway which was insecure, which the evidence disclosed he had been using in that condition for several years. The evidence does without substantial contradiction support the facts comprehended within the proposition contended for. Nevertheless, the issue of vice principal aside, we conclude that such facts do not, as matter of law, establish contributory negligence which would preclude a recovery. By the oft-stated rule appellee's sole duty, aside from assuming the risk incident to his employment, was the exercise of that degree of care in the performance of his duties which persons of ordinary prudence exercised to the same end when similarly engaged. Under the rule stated, it appearing that appellee was without knowledge of the fact that the box head was out of repair, or, at most, that fact being one in dispute, it was a question of fact for the determination of the jury whether he should have gone upon the insecure runway without a lantern and made more than one attempt to pull the lever.

[8-10] It is also urged under practically the same assembly of facts that appellee was not entitled to recover for the reason that he was familiar with the conditions which brought about his injuries or with which he could have been familiar in the exercise of ordinary care, and hence assumed the risk of what occurred. Assumed risk is:

"The voluntary exposure of the servant, without remonstrance, to the ordinary hazards of the particular use of machinery or appliances, claimed by him to be defective or unfit, but of which condition and its dangers he knows, or must necessarily have acquired knowledge in the ordinary pursuit of his own duties." G., H. & H. Ry. Co. v. Hodnett (Sup.) 163 S. W. 15.

The proximate cause of appellee's injury was the defective box head, which, again waiving the issue of vice principal, it was not his duty to keep in repair, and appellee's evidence not only tends to show, but the jury found, that he was without knowledge in that respect. Further, "there is on the servant no duty of inspection," and he may in the pursuit of his work "assume that the master has done his duty and provided for him a safe place to work." American Mach. Co. v. Haley, 165 S. W. 83, and cases cited. Accordingly we conclude that the issue of assumed risk was properly referred to the jury.

[11] It is also urged that the court erred in refusing to allow appellant's specially requested charge defining what in law constitutes a vice principal. What the court actually did was to propound to the jury certain questions relating to the duties and authority of appellee under the terms of his employment. These questions were pertinent to the evidence as developed at trial, and whether appellee was a vice principal or not would arise as matter of law upon the answers of the jury thereto. Such course was proper in view of the submission of the case upon special issues. Had the case been submitted to the jury generally, the refused charge, or one substantially similar, would have been proper. In that connection we have stated the law of vice principal as announced by the Supreme Court, which will be the guide upon another trial.

[12] Complaint is made of the admission of certain testimony in relation to repairing the box head after appellee's injury and the action of the court in attempting to limit or explain the purpose of the admission of such testimony. We will not attempt to state specifically the several issues so arising, but will state the rule in such cases for the guidance of those interested upon another trial. An accepted authority says:

"While some courts hold to the contrary, the great weight of authority is that evidence of changes or repairs made subsequently to the injury, or as to precautions taken subsequently to prevent recurrence of injury, is not admissible as showing negligence or as amounting to an admission of negligence. The reason for the rule is that the effect of declaring such evidence competent would be to inform a defendant that, if he makes changes or repairs, he does it under a penalty," etc. 29 Cyc. 616. ●

The rule is sustained by our appellate courts. G., C. & S. F. Ry. Co. v. McGowan, 73 Tex. 355, 11 S. W. 336; St. L., A. & T. Ry. Co. v. Johnston, 78 Tex. 536, 15 S. W. 104; Texas Trunk Ry. Co. v. Ayres, 83 Tex. 268, 18 S. W. 684. An exception to the rule as stated by the same authority exists where in proving the conditions existing at the time of the injury it is necessary to show that subsequently repairs were made. It is also admissible to prove subsequent repairs in rebuttal of any claim that the condition which brought about the injury could not be improved. 29 Cyc. 618, 619.

[13] Appellee testified, and the admission of the testimony is complained of on appeal, in effect, that he examined the box head nine days after he was injured, and that at that time the bolts which fastened it were loose, and that it was in "apparently" the same condition it was when he was injured. In such matters, when the time between the injury and the subsequent examination is not

considerable, such evidence is admissible as showing the condition at the time of injury. G., C. & S. F. Ry. Co. v. Johnson, 83 Tex. 628, 19 S. W. 151; Austin, etc., Ry. Co. v. Flannagan, 40 S. W. 1043.

[14] What we have just said concerning examination of the machinery subsequent to the injury applies with reference to such examinations prior to the injury, and in admitting the evidence of the witness Finkley, also complained of, who examined the box head three months prior to the injury, the trial judge should have admitted the evidence if it appeared there had been no change in the condition of the machinery since the accident, and then have exercised his discretion with reference to the lapse of time. In such matters this court necessarily will and must allow much to the discretion of the trial judge.

[15, 16] As we have said at another place in this opinion, appellant pleaded adjustment with appellee of his claim for damages and adduced testimony tending to sustain such plea, and the court submitted the issue so raised to the jury, which the jury resolved against appellant. In connection with such issue evidence of attempts to compromise was admitted, among which was an offer by appellee to accept $1,000 and other considerations in settlement of his injuries, but which was not accepted by appellant, and which was not the adjustment claimed by appellant as having been consummated. For the purpose of eliminating from the consideration of the jury the attempts at compromise the trial court instructed the jury not to consider appellee's offer to accept the $1,000 in payment for his injuries. The court, however, went further, and directed the jury not to consider "any other amount" offered him, "or that the defendant agreed to pay him any amount in settlement of his claim." This charge clearly withdraws from consideration of the jury the very settlement which appellant claims was made, and which was submitted to the jury for their consideration. It was correct to withdraw from consideration of the jury the unaccepted offer of the appellee, but not the offer which the appellant claims was accepted, and in support of which it offered testimony. Yet such was the result when the court told the jury it could not for "any purpose whatever" consider the claim that appellant "agreed to pay him (appellee) any amount in settlement of his claim." There could have been no settlement without such an agreement. We are constrained to believe the charge was misleading, and hence error.

[17, 18] Appellee at the time he was injured was insured against accident, and certain declarations contained in the proof made to the insuring company in support of his claim concerning the capacity in which he was employed by appellant were offered in evidence on that issue alone. For the purpose of limiting the consideration of the jury

to the very purpose for which the proof of the insurance was made the court instructed the jury that they could not consider the policy of insurance for any purpose. While we think the policy proved nothing, and that the fact that he was insured against accident could not affect his right to recover, if otherwise entitled to do so, the better course would have been to direct the jury in so many words that, while the declarations in the proof could be considered on the issue of the capacity in which appellee was employed, in no other respect could they consider either the proof or the fact of insurance.

[19, 20] There are a number of assignments of error which complain of remarks of counsel for appellee made in the selection of the jury and in the presentation of the case to the jury. Since the case is to be reversed, it will not be necessary to specifically consider the several assignments, but it is appropriate to state the general rule in such matters for observance on another trial, which is that, while the court has no discretionary control over a litigant's right to be heard by counsel save in reference to the order, time, and division, etc., he does have the right to require counsel to observe a proper scope in the discussion. Generally speaking, all authority holds that the most liberal freedom of speech should be allowed in such matters. Counsel is at liberty to discuss all facts in evidence or admitted by the pleading, "arraign the conduct of the parties, and attack the credibility of the witnesses, and he may engage in oratorical conceit or flourish." He may discuss the failure of parties to the suit to testify, or to call known favorable witnesses. He may draw conclusions or inferences from the evidence adduced and give his opinion thereon, etc. He may not state facts not supported by or inferable from the evidence in the case under discussion, save such matters of which the court takes judicial notice or has common knowledge. He may not discuss excluded or inadmissible evidence, nor facts based on his knowledge only. There are many other matters which counsel may do or may not do under the general rule which it is unnecessary for us to detail. In the instant case, however, we do not approve the action of counsel in the preliminary examination of the jury in asking them whether any "heeler" of appellant had discussed the case with them. The term is opprobrious, and means in common and general acceptation a person who is the lackey or hanger-on of another, and in a political sense an unscrupulous and disreputable person. 4 Cent. Dict. 2771. The inference to be drawn from the inquiry by those who were to try the case was that appellant probably had such persons on hand to approach the jury that was to try the case. Such at least was the innuendo fairly to be drawn from the manner of the use of the term. We do not mean, of course, to assert that it was improper for counsel to inquire if any agent,

attorney, or other representative of appellant had discussed the case with them. There are other remarks of counsel contained in the record of doubtful privilege under the general rule, but, since it is probable that the court on another trial will confine counsel within the rules cited, further discussion is unnecessary.

There are some issues presented in the brief which we have not discussed, but which we have nevertheless considered, and which are overruled because, in our opinion, they fail to present reversible error.

For the reasons stated, the judgment is reversed, and the cause remanded for another trial not inconsistent with the views herein stated.

---

⟨⎓⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

