### G., H. & S. A. R'y Co. v. Joseph Lempe.

(Case No. 1420.)

1. MASTER AND SERVANT.— The doctrine announced, that, when a servant contracts to work for his employer, he assumes all the risks ordinarily incident to the business; and where he has equal knowledge with the master of the danger attending the work, that he assumes the consequences of the risk if he continues in the employment.  To this rule an exception exists in a case where the machinery furnished by the master in connection with the work is obviously defective, but the danger is not apparent, in which case the master is liable.
2. SAME.— The cases of Patterson v. The Pittsburg R. R. Co., 76 Pa. St., 389; Mayes v. Chicago, Rock Island & Pac. R. R. Co., Alb. Law J., vol. 27, and Strahlendorf v. Rosenthal, 30 Wis., 675, referred to, and distinguished from this; and on the law as above stated, the cases of De Forest v. Jewett, 88 N. Y., 264; Louisville & Nashville R. R. Co. v. Orr (Indiana, November 3, 1882), 8 Am. & Eng. R. R. Cases, 94; Umbach v. Lake Shore R. R. Co. id., 98; Smith v. St. Louis, etc., Co., 69 Mo., 32, and Naylor v. Chicago & Northwestern R. Co. (Wisconsin, December 30, 1881), cited and approved.

APPEAL from Colorado.  Tried below before the Hon. Everett Lewis.

The opinion states the facts.

*E. P. Hill*, for appellant.

*Foard & Thompson*, for appellee, cited Tarrant v. Webb, 18 C. B., 797; Farwell v. Boston, etc., R. R. Co., 4 Metc. (Mass.), 473; Hard v. Vt. & Canada R. R. Co., 32 Vt., 473; Moss v. Pacific R. R. Co., 49 Mo., 167; Ryan v. Cumberland, etc., R. R. Co., 26 Pa. St., 384; Wright v. N. Y. C. R. R. Co., 25 N. Y., 562; Warner v. R. R. Co., 39 N. Y., 340; Wigmore v. Jay, 5 Exch., 354; Hutchinson v. Railway Co., 5 Exch., 343; Wonder v. Railway Co., 32 Md., 411; Patterson v. Pittsburg R. R. Co., 76 Pa. St., 389; Gibson v. R. R. Co., 60 N. Y., 607; Laning v. R. R. Co., 49 N. Y., 521; Flike v. R. R. Co., 49 N. Y., 549; Keegan v. Western R. R. Co., 8 N. Y., 175; Connolly v. Poillon, 41 Barb. (N. Y.), 366; Clayards v. Dethick, 17 Q. B., 439; Greenleaf v. R. R. Co., 29 Iowa, 14; Clark v. Holmes, 7 H. & N., 942; Couch v. Steel, 3 E. & B., 402; Kroy v. Chicago R. R. Co., 32 Iowa; Ford v. Fitchburg R. R. Co., 110 Mass., 240; Patterson v. R. R. Co., 76 Pa. St., 389.

WILLIE, CHIEF JUSTICE.— Lempe was an employee of the appellant, whose duty it was to work in the "bridge gang." After being engaged in bridge work for twenty days, he, together with the remainder of the gang and their foreman, went to New Philadelphia to fix a well. He had never worked on a well before, and worked on this one by order of his foreman. This well was one used by the railroad company to get water for its engines. It had been out of repair for a month or more and the curbing had begun to fall in. Lumps of dirt fell in every day, and about three feet from the surface the well had caved, leaving the surface dirt overhanging and the curbing had begun to fall in. It had been raining considerably about the time Lempe went to work there, and the ground was saturated with water, and the earth was caving in at intervals all the time. This caving could have been prevented by digging away the overhanging dirt. The well was fifteen or twenty feet square when curbed, and, according to one witness, ten, and to another, twenty feet deep.

After appellant had been at work on the well for about three days, and whilst he was on the outside of the curbing, spiking a plank to its place, a fall of dirt from the top of the well occurred, which, striking him, broke his upper jaw in one place, his lower jaw in two places, and tore three of his ribs loose from the backbone. During the three days that appellee worked in the well the overhanging dirt was constantly falling, and he and his co-laborers dug it up and removed it as fast as it caved. In the opinion of witnesses examined on the trial, the well was dangerous for a month

or more before the work commenced, and that means could have been devised to prevent the overhanging dirt from falling.

Lempe brought this suit against the railroad company to recover damages for the injuries thus received and obtained a judgment for $3,000. A motion for new trial made by appellant having been overruled, an appeal was taken to this court. At the last Galveston term the judgment below was affirmed, but on application of appellant's counsel a rehearing was granted, and the cause now comes before us for a re-examination.

The errors assigned are that the court refused, on request of defendants below, to charge the jury to find in its favor, and in overruling the motion for a new trial, in which it was urged that the verdict and judgment were contrary to the law and the evidence.

The appellee claims that he was entitled to a verdict on the following grounds:

1. Because the accident was the result of his obeying the orders of the company and engaging temporarily in a work different from that in which he was ordinarily employed.

2. Because appellant knew of the dangerous character of the work and did not take any precaution to prevent an injury to appellee.

3. Because appellee's knowledge of the risk does not prevent his recovery, the injury occurring from an involuntary act, or one done by express command of appellant.

4. Because appellee had a right to rely upon the care and superior knowledge of appellant in protecting him from injury.

5. Because the danger not being so apparent that appellee as a prudent man had cause to apprehend injurious consequences, he was not guilty of contributory negligence.

6. Because the question of appellee's knowledge of the danger was properly left to the jury, and they having determined that and all other facts in the cause, their finding should not be disturbed.

As to the first of these grounds, it is sufficient to say that the proof does not show that working upon a well of the company was not a part of the ordinary employment of the bridge gang. We do not think this circumstance in itself sufficient to authorize the inference. It may have been a part of the duties of these very laborers to repair the wells of the company; or they may have been persons employed to work generally for the corporation, and were called the "bridge gang," by the witness, because engaged at the time in working upon one of its bridges. The true character of their duties should have been shown and not left to conjecture; but no evidence was offered on the subject. Divested of all proof as to

the appellant having been forced to engage in work different from that which he had been employed to perform, the only question left in the case is as to the master's liability for injuries to his servant, received whilst voluntarily engaged in a dangerous work under orders of the master, the servant having equal means with the master of knowing the extent of the danger. We state the question in this way because the facts of the case show that Lempe was just as well aware of the perilous character of the business in which he was engaged as was his employer; and the propositions made by appellees embrace an implied, if not an express, admission to this effect. The danger to appellant arose from the unsafe condition of the well, caused by the fact that a portion of the curbing had given away, and the ground, some few feet from the top of the well, had caved in, leaving the overhanging earth without any support. The injury received was from the fall of this unsupported earth upon the appellant, who was working beneath it. The means of knowing the danger was afforded him by the situation in which he was placed whilst at work with the threatening matter above him, and in his view all the time. He was acquainted with the laws of gravitation, and knew that a heavy body unsupported by adequate props was liable to fall at any time. He also knew that the frequent rains had loosened the dirt and rendered it still more liable to cave in. He was made still more aware of these perils from having worked three days in the well, and seen large quantities of earth and other substances actually fall around him. He was a man twenty-seven years of age, and, for aught that appears, of ordinary capacity and judgment. It is true that he had never before engaged in working in a well, but it required no skill in well-digging to know that a heavy body without adequate support would fall, or that earth saturated with water was less liable to cohere than when dry and hardened; that the circumstances which had actually caused the dirt to fall once would likely produce the same effect at another time; and that the fall of the chunks of earth would cause him damage. These things he must have known as well as the most skilled employee in the service of the company.

What are the principles of law which apply to such a state of facts?

The general principle is, that, when a servant enters into the employ of another, he assumes all the risks ordinarily incident to the business, and as between himself and the master he is supposed to have contracted on those terms. Wood on Master & Servant, sec. 326. Another principle is: Where the servant has equal knowledge

with the master of the danger incident to the work, he takes the risk upon himself if he goes on with it. Id., sec. 349. There are some circumstances which will vary these rules, or rather create exceptions to them, but the present case is not brought within any of such exceptions. One of these is where the defects in the machinery or the premises about which the servant is employed are obvious, but the danger is not apparent. In such cases the master is held liable because the master should have taken steps to ascertain whether the defects render them unsafe. Wood on Mas. & Serv., sec. 336. Of this character are all cases where there is some fault in machinery, or of a track of a railroad, which are as obvious to the servant as to the master, but which, from want of experience or knowledge on the part of the former, he cannot determine that the defect will be productive of danger to him. He may know that certain appliances usually connected with an engine are lacking, or that some of the rails of the track are warped or out of place, yet if he did not know, or could not reasonably have known, that in the one case there was imminent peril of an explosion, and in the other of the cars being thrown from the track, he could recover if injured by such accidents. On the other hand, if he knew, or should reasonably have known, that such defects would necessarily subject him to risk from such occurrences, he has no cause of action against his master. Id., sec. 355, and cases cited.

The difference is between going into the service or continuing in it, "*knowing* that the instrumentalities employed are unsafe and dangerous," and knowing that defects exist, but not that they necessarily render the employment of a perilous character. It is sought by appellee's counsel to bring this case within the above exception, and to that end he cited several reported cases; but with the above distinction in view, all the authorities cited by him are easily explained, and rendered consistent with the law as announced in this opinion.

The case of Patterson v. Pittsburg R. R. Co., 76 Pa. St., 389, was where a conductor was injured in an accident caused by a defective switch. The court held the company liable, although the defect was known to the conductor, because the defect was not such as to threaten immediate injury, and that it was reasonably probable that it might safely be used by extraordinary caution or skill. But they also held that if the instrumentality had been so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master would not be held liable for the resulting damage. Besides, it was shown in that case that the proper officers of the road had been notified of the danger and they had promised to re-

pair the defect, and had requested the conductor to continue in the service. The case of Mayer *v.* Chicago, Rock Island & Pacific R'y Co., cited from Alb. Law J., vol. 27, page 24, was a case where a switchman was killed by the neglect of the company to place blocks between the guard rails and the track rails at the switch. It was held that he was not necessarily negligent for continuing in the service, although the absence of the blocks was evident. It is there said that because the want of blocks was apparent to all observers does not charge him with a knowledge or want of knowledge of the *defects* in the track. He must have known, or possessed the means of knowing, that the absence of the blocks *was a defect causing danger to him and others,* which is precisely the doctrine announced in this opinion. The cases cited in the opinion seem to go further, and hold that the plaintiff waived the right of recovery if he knew the defects only, and continued in the service. See Perigo *v.* C., R. I. & P. R'y Co., 52 Iowa, 276, and others cited. And so of the other cases cited by counsel.

The case of Strahlendorf *v.* Rosenthal, 30 Wis., 675, is not analogous because the facts show that the defects and danger were known to the employer, but unknown to the employee, and were not patent or obvious, and the general principle asserted in this opinion was there sanctioned by the court. Subsequent to the decision of that cause, the same court, in Naylor *v.* Ch. & N. W. R. R. Co., a case almost exactly similar to the present one, where the evidence showed that the plaintiff, before and at the time of receiving the injury complained of (from the falling of a bank of earth, under which he was excavating ground for defendant), was fully informed of the peril to himself of the services in which he was engaged, and voluntarily remained in the dangerous position he was occupying, and the court held that he was not entitled to recover. The court comment on Strahlendorf *v.* Rosenthal, and distinguish it from the one they are deciding, on the principles we have already alluded to. The only difference between Naylor's case and the one under consideration was the fact that the agent of the defendant, a few minutes before the bank fell, notified Naylor of his danger. But the facts we have already stated gave Lempe as much notice of his peril as if positively informed of it by another. As illustrating and enforcing the principles announced by us, we refer to De Forest *v.* Jewett, 88 N. Y., 264; Louisville & Nashville R. R. Co. *v.* Orr (Indiana, November 3, 1882), 8 Am. & Eng. R. R. Cases, 94; Umbach *v.* Lake Shore, etc., R'y Co., id., 98; Smith *v.* St. Louis, etc., Co., 69 Mo., 32; Wharton on Neg., § 213.

The evidence shown by the transcript makes out a case of an em-

ployee, who, after having an opportunity of becoming acquainted with the risks of his situation, voluntarily accepts them; and of one injured while voluntarily at work in a place, the dangers of which he had the same means of knowing as did his employer; and under such a state of facts the judgment should have been for the defendant; and it is therefore reversed and the case remanded.

REVERSED AND REMANDED.

[Opinion delivered February 23, 1883.]