## AMERICAN MACHINERY CO. v. HALEY.

(Court of Civil Appeals of Texas. Dallas. March 14, 1914. Rehearing Denied April 4, 1914.)

1. TRIAL (§ 139*)—DIRECTION OF VERDICT.

To warrant a direction of verdict for defendant, it must appear that there is no testimony upon which the jury can reasonably find a verdict for plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. MASTER AND SERVANT (§§ 101, 102*)—SAFE PLACE TO WORK—MASTER'S DUTY.

The master must exercise ordinary care to furnish his servant a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

3. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO SERVANT—QUESTION FOR JURY.

In an action for an injury to a servant caused by a dummy elevator falling which the servant was dismantling preparatory to the installation of new elevators, held, under the evidence, a question for the jury whether the master exercised due care to provide a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 203*)—ASSUMPTION OF RISK—NATURE AND EXTENT.

Assumed risk is the voluntary exposure of the servant, without remonstrance, to the ordinary hazards of the particular use of machin-

---

ery or appliances, claimed by him to be defective or unfit, but of which conditions or dangers he ·knew, or must necessarily have acquired knowledge in the ordinary pursuit of his duties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543; Dec. Dig. § 203.*

For other definitions, see Words and Phrases, vol. 1, pp. 589–591; vol. 8, pp. 7584, 7585.]

**5. MASTER AND SERVANT (§ 205*)—PLACE TO WORK—INSPECTION AND TEST.**

In the application of the rule of assumed risk, there is on the servant no duty of inspection, and, in the pursuit of his work, he may assume that the master has done his duty and provided for him a safe place to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 547–549; Dec. Dig. § 205.*]

**6. MASTER AND SERVANT (§ 288*)—ACTIONS FOR INJURY TO SERVANT—QUESTIONS FOR JURY.**

In an action for an injury to a servant caused when the supports of a dummy elevator which he was dismantling fell, the question of assumed risk *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

**7. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—QUESTION FOR INJURY—CONTRIBUTORY NEGLIGENCE.**

In an action for an injury to a servant by a dummy elevator which he was dismantling falling, evidence *held* sufficient to take to the jury the question of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

Error to District Court, Dallas County; Kenneth Foree, Judge.

Action by B. F. Haley against the American Machinery Company. From a judgment for plaintiff, defendant brings error. Affirmed.

Lassiter, Harrison & Rowland, of Ft. Worth, for plaintiff in error. Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for defendant in error.

RASBURY, J. Defendant in error sued plaintiff in error for damages for personal injuries sustained by defendant in error while employed by plaintiff in error as a common laborer; the precise grounds of negligence alleged being the failure of the plaintiff in error to provide defendant in error a reasonably safe place for the performance of the duties of his employment. Plaintiff in error met the charge of negligence by the general denial and pleas of assumed risk and contributory negligence. Trial by jury resulted in verdict for defendant in error, followed by appropriate judgment, from which this writ of error is prosecuted. ·

The facts essential to a consideration of the appeal are in substance as follows: Plaintiff in error was engaged in installing elevators in a seven-story building in the city of Dallas, then in course of construction, and defendant in error was employed by plaintiff in error as a common laborer or unskilled

workman in and about the work. At the time defendant in error was injured he was engaged in dismantling a "dummy" elevator under directions of plaintiff in error's foreman. This "dummy" elevator was a temporary frame structure which was drawn up and down the elevator shafts in the manner that an ordinary elevator moves, except that the "dummy" was drawn up and down the shaft by block and tackle. The "dummy" had a floor and a top; the latter being supported by uprights extending from the floor to the top, the sides of the dummy being practically uninclosed. The dummy was built for the twofold purpose of transporting men and material up and down the building. The work of installing the elevators had progressed to that extent that it became necessary to dismantle the temporary structure we have described in order that the permanent cars might be placed, and, as we have said, defendant in error was engaged in that duty. It was the custom to stop the dummy for a long period of time at some given floor, and the one defendant in error·was dismantling had been at rest on the third floor of the building for quite three weeks, and was secured in position in the following manner: The shafts built in the building for the elevators were inclosed on three sides, and open on one. Fastened in the solid wall directly in front of the opening in the shafts were steel or iron brackets or bolts, which extended from and held in position an upright steel guide pole up and down which the permanent elevators would run when installed. On these brackets in the space between the guide poles and the walls was placed a 2x4 plank extending across the shaft wall. A 2-x10 timber or plank was placed on the 2x4 so fastened against the wall, and extended across the shaft opening, resting on the floor of the building. Upon this 2x10, arranged and secured as we have said, the dummy was lowered and remained until removed to another floor. Defendant in error in the process of dismantling the elevator had, with the aid of a pinch bar, removed the top, the floor, and all but three or four pieces of the framing, when the 2x10, upon which he was standing, together with the remaining portion of the "dummy," fell a distance of about 40 feet, and the defendant in error, as a result, was seriously and permanently injured. The 2x4, which rested upon the bolts fastened in the wall, did not fill the space between the guide pole and the wall by approximately 4 inches, and hence did not set firmly on the bolts, and in the space between the guide poles and the wall. It, however, remained on the bolts when the 2x10 and the dummy fell, but was out of adjustment. The fall was caused by the 2x10 working or slipping off the 2x4. Plaintiff was familiar with the method and manner of anchoring the dummy, and had assisted, without accident, in dis-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

mantling a similar one in the companion shaft in the building. He made no examination or inspection of the supports to see if they were safe, but assumed that the foreman had done so, and relied upon plaintiff in error in that respect. Plaintiff in error's foreman examined the supports two or three days before the accident, and found them safe and in good condition.

[1-3] The first error assigned is the refusal of the trial judge to direct verdict for plaintiff in error. This should have been done, it is urged, because the evidence fails to show that the accident resulted from any negligence on the part of plaintiff in error. Before such course is warranted, the rule is that it must appear from the whole case as made by the testimony that the plaintiff has no testimony upon which the jury can reasonably find a verdict in his favor (I. & G. N. Ry. Co. v. Edwards, 100 Tex. 22, 93 S. W. 106); and we think the evidence in the instant case falls short of sustaining the rule stated. The general rule is that it is the duty of the master to furnish the servant a safe place to perform his duties, and the measure of his duty is to exercise ordinary care in that respect, and whether the facts disclose a compliance with the rule is at all times a question for the jury. In connection with the latter rule it is practically undisputed that the place assigned to defendant in error to perform his labor was approved and furnished by plaintiff in error; in fact a similar arrangement was adopted and furnished for dismantling the dummy in the companion shaft prior to dismantling the one upon which appellee was injured. The timber supporting the dummy did fall, and that fact, together with the facts showing the manner and method of anchoring the elevator, were all the facts adduced, and it was for the jury to say, upon consideration of the same whether plaintiff in error met the rule of ordinary care. For us to say that plaintiff in error did exercise ordinary care would be to pass upon the facts. We incline to the opinion that the jury probably concluded that the cause of the fall of the dummy was that the 2x10 by degrees worked off the 2x4; yet, admitting such to be the only conclusion to be deduced from the testimony, it does not present a case where there is no testimony from which the jury could reasonably have deduced negligence, since the jury may have believed that plaintiff in error should have anticipated such a result, and such conclusion is reasonable in view of the narrow surface of the 2x4 upon which the 2x10 rested, and the failure of appellant to in some manner fasten the 2x10 to the 2x4 to prevent the very result that did probably occur. Nor does the fact that the 2x10 may have worked off the 2x4 as a result of appellee's exertions in performing the work assigned to him affect the conclusion stated, as urged by appellant. On the contrary, it occurs to us that it supports the theory that appellant, in the exercise of ordinary care in preparing appellee a safe place to work, should have anticipated the identical mishap when it directed appellee to perform his work upon the elevator constructed and arranged by appellant for appellee's use.

[4-6] It is next urged under said assignment that appellee assumed the risk of the conditions which brought about his injuries. In a recent case assumed risk is said to be "the voluntary exposure of the servant, without remonstrance, to the ordinary hazards of the particular use of machinery or appliances, claimed by him to be defective or unfit, but of which conditions or dangers he knew, or must necessarily have acquired knowledge in the ordinary pursuit of his duties." G. H. & H. R. Co. v. Hodnett (Sup.) 163 S. W. 15. In the application of the rule of assumed risk it may also be said that there is on the servant no duty of inspection, and that, in the pursuit of his work, he may assume that the master has done his duty and provided for him a safe place to work. T. & N. O. Ry. Co. v. Bingle, 91 Tex. 287, 42 S. W. 971; Peck v. Peck, 99 Tex. 10, 87 S. W. 248. Under the rules stated it is argued by plaintiff in error, in effect, that an examination of the 2x10 by defendant in error at intervals as he progressed with his work would have disclosed any change in the original safe place furnished him by plaintiff in error, and that such occasional examination was obviously necessary to appellee's safety. It occurs to us that the proposition furnishes a refutation of its own soundness under the evidence. It is claimed by plaintiff in error, and its foreman testified, that the arrangement which anchored the elevator was a safe place as arranged, and that the change from a safe place to an unsafe one resulted as defendant in error's work progressed. Defendant in error testified that he had dismantled a similar dummy on a similar arrangement, without accident, and relied upon plaintiff in error to furnish him a safe place to work upon. Now, what we have said being true, and conceding that defendant in error, by turning aside from his employment and making an occasional examination of the 2x10, would have discovered whether it was in danger of slipping from the 2x4, nevertheless to charge defendant in error, under the rule of assumed risk, with the duty claimed is inevitably but to charge him with the duty of inspection, or to shift to the servant the duty imposed by law upon the master. Defendant in error's sole duty, aside from assuming the risks of his employment while engaged in his work, was the exercise of that care which persons of ordinary prudence exercise to the same end when similarly engaged. The most that can be said is that it was the duty of the court to instruct the jury on assumed risk in compliance with the rule we have stated,

and leave it with the jury to determine as they would any other question of fact. This the court did, and the jury passed on the question, and we, are without authority to disturb the same.

[7] It is also urged that the peremptory charge should have been given for the reason that the dangers of the situation were so obvious that appellee contributed to his injury by failing to take such precautions as would insure his safety while engaged in his work. In·view of the duty of plaintiff in error to furnish a safe place for defendant in error to work, and to inspect the same, and in view of the character of the structure, and defendant in error's knowledge of same, we believe the issue of contributory negligence was raised. The trial court was of like view, and correctly submitted the same for the jury's determination, and, since the evidence did not show that defendant in error, as matter of law, was so guilty, the finding of the jury settled the issue.

The second assignment complains of the refusal of the court to instruct the jury, in effect, that if plaintiff in error's foreman inspected the elevator three or four days before the accident, and found it properly supported, and that the foreman had no reasonable cause to believe the supports had been changed up to the time defendant in error began work, and that defendant in error was experienced in supporting . such dummy elevators, and that he could have detected during his work the position of the supports, and that under the circumstances plaintiff in error's foreman acted prudently in directing defendant in error to perform the work he did, to find for plaintiff in error, without reference to all other issues in the case. Plaintiff in error says it was entitled to this charge under the rule permitting the defendant to group and have presented to the jury facts which, if true, would in law establish a given defense when not covered by the main or allowed special charges. Such is the rule. St. L., S. F. & T. Ry. Co. v. Overturf, 163 S. W. 639, decided by this court at this term, etc. But we think the charge in consonance with what we have said at another place in this opinion was properly refused, because it ignored plaintiff in error's duty to furnish defendant in error a safe place to work, and placed upon him the duty of inspection; and for the further reason that the court did, at the request of plaintiff in error, instruct the jury that if, after defendant in error's foreman inspected the dummy, others altered its situation, and rendered it less secure, and such alteration was the proximate cause of defendant in error's injury, to find for plaintiff in error, without reference to other issues.

The fifth assignment urges that the fifth paragraph of the court's charge is erroneous, because vague, involved, misleading, and con-tradictory. The charge correctly told the jury that appellee assumed all the dangers and risks of his employment of which he had knowledge, or of which he must necessarily have acquired knowledge, and that he, as well, assumed all risks ordinarily incident to his employment, etc., but that he did not assume the risk of appellant's negligence. It is the qualification or explanation at the conclusion of the charge that is complained of. While we do not agree that the charge is susceptible to the criticism directed against it, a discussion of the issue is unnecessary, since the court, by two special charges given at the request of plaintiff in error, placed the matter in such light as to remove all doubt from the minds of the jurors as to what was intended. By the first special charge the jury were told that, if the dummy was insecurely supported and dangerous when defendant in error commenced dismantling the same, and such condition was due to plaintiff in error's negligence, but the danger was nevertheless patent and obvious, so that one of ordinary prudence situated as was defendant in error could have discovered the same in time to have avoided the accident, to find for defendant in error. By the second special charge the jury was told that, if defendant in error had equal means with. plaintiff in error for seeing the danger of the dummy falling as a result of its insecure fastenings, defendant in error assumed the risk of it doing so, and verdict should be for plaintiff in error, without reference to any other issue in the case.

The main charge, as supplemented by the two special charges, placed both defenses before the jury in as favorable a light for defendant in error as he could demand, and surely did not mislead the jury in that respect.

We have carefully examined the sixth and seventh assignments of error, and, because they do not, in our opinion, disclose reversible error, same are overruled.

The judgment is affirmed.