CLAYTON v. CHICAGO, R. I. & G. RY. CO. et al.

No. 13915.

Court of Civil Appeals of Texas. Fort Worth.

May 19, 1939.

Rehearing Denied June 16, 1939.

L. D. Eakman, of Montague, and T. B. Coffield, of Bowie, for appellant.

Benson & Benson, of Bowie, and Jenkins Garrett and Walker, Smith & Shannon, all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

While in the employment of the Chicago, Rock Island & Gulf Railway Company, Ocie L. Clayton sustained an injury to the index finger of his left hand, and he has appealed from a judgment denying him a recovery against the railway company for damages resulting therefrom.

As grounds for a recovery plaintiff alleged that he was employed by the defendant to do manual labor in connection with the rebuilding and reconstruction of defendant's main line of railroad maintained by it in handling interstate commerce. According to further allegations in his petition, in the course of his employment he was required to use a claw-bar to pull spikes holding old rails that were to be replaced with new ones; the claw-bar so furnished was badly worn and in a defective condition for such use; by reason of that condition it slipped while he was using it to pull one of the spikes, causing his left hand to be mashed between the handle of the claw-bar and an iron plate in the tie; by reason of his minority and inexperience he did not appreciate the danger of using the claw-bar; and defendant was guilty of negligence in furnishing it to him for such use, and in failing to warn him of the danger incident thereto; such negligence was the proximate cause of his injury, and he sustained damages in the sum of $2,600, which were itemized in his petition.

The defendant pleaded a general demurrer, certain special exceptions to the petition, a general denial, and assumed risks.

The following facts were established by plaintiff's uncontroverted testimony upon the trial of the case before a jury: At the time he was employed plaintiff was 20 years of age. He was employed by the defendant as a common laborer to assist in the work of reconstruction and rebuilding of defendant's railroad track for use

694

in intra and inter state traffic. He had been working in that capacity about ten days before his injury hereinafter related; had never before worked for a railroad. On the morning of his injury he was knocking rocks from under the rails with a foot-adz for about two hours. At the direction of the straw-boss he went down the line and began pulling spikes with a crow-bar, that he took off the work car, which was about six feet long and approximately an inch or inch and a half in diameter. Did not examine it at that time. After pulling spikes with the bar for about the length of a rail, he came to a spike the bar would not pull because he could not get it under the spike until the straw-boss drove it under. At the direction of the straw-boss, he went down the line and after pulling two or three more spikes he attempted to pull another and in so doing the bar slipped off the spike, causing him to fall, and in falling the index finger of his left hand was caught between the bar and the tie plate and injured. His injury has caused him pain and suffering and he has had medical treatment for it.

Plaintiff testified as follows:

"Q. Had you ever used a crow bar to pull spikes before that morning? A. No.

"Q. State what instructions you were given by the foreman, or by anyone there, in connection with the use of that bar. A. There was no instructions.

"Q. I will ask you, what was the condition of that crow bar with reference to the place where it caught the spikes? A. It was just worn smooth; just like a worn out claw hammer. It wouldn't hold under the spike; the spike had to be up an inch or two before it would pull it.

"Q. The spikes prior to the one on which you were injured; had it caught on all of them? A. All except one.

"Q. That was the one where you drove it under? A. Yes.

"Q. The foreman told you to go on down ahead and he would get that one? A. Yes.

"Q. Did anybody tell you it might be dangerous to use that crow bar?

"Mr. Benson: Object to that as irrelevant and immaterial; leading and suggestive.

"The Court: Sustained.

"Mr. Coffield: We except. Q. Did anybody warn you to be careful in using that bar? A. No, sir.

"Q. When you first put it on the spike did it hold? A. Yes.

"Q. Then when you put your weight on it, it fell? A. Yes. * * *

"Q. How long had you used that crow bar before you were injured? A. About twenty minutes."

On cross examination he testified:

"Q. You had been, for several years prior to this time, earning your living by common labor, hadn't you? A. Yes.

"Q. I believe you stated you were married? A. Yes.

"Q. Now, you made a statement to Mr. English here, up in your lawyer's office with Mr. Eakman present, concerning this matter? A. Yes.

"Q. You said in that statement: 'this was about nine thirty in the morning, and at that time all the better crow bars had been picked by the men pulling spikes and we had to take what was left,' that is right? A. That is right.

"Q. You said, 'I didn't examine the bar when I first got it, but noticed it wouldn't catch a spike head as it should, and on the spike it would not pull the assistant foreman tried to drive the bar in under the head with a maul, but couldn't make it take hold and told me to go on and he would get another bar to pull that spike,' that is right, isn't it? A. Yes.

"Q. You did notice it was worn and slick and wouldn't catch a spike like it ought to? A. Yes.

"Q. It was worn so badly you noticed that when you first began using it? A. Some of the spikes it would pull all right; if the spikes were down like they should be, it wouldn't pull them.

"Q. You noticed that immediately, didn't you? A. Yes.

"Q. You noticed it was in a worn, dilapidated condition, at the time, didn't you? A. Yes.

"Q. It works pretty much on the same plan as a claw hammer, except the claw hammer isn't nearly so large? A. You pull down on the bar and you pull up on a claw hammer.

"Q. Well it operates to draw the spikes? A. Yes.

Q. There is a heel immediately behind which forks, and rests on the tie, and by putting weight on the upper end of the bar, the spikes are drawn from the tie? A. That is right.

"Q. During the ten days you had been working there, prior to that accident, you had been working right along with the crew that was pulling spikes, hadn't you? A. I had been working behind them.

"Q. Were you working in sight of them? A. Yes.

"Q. You had seen them pull spikes and knew what they were doing? A. Yes.

"Q. You had been seeing that for ten days? A. No.

"Q. How long? A. About four days.

"Q. What were you doing the other six days? A. We were stringing steel.

"Q. Doing what? A. Stringing steel rails.

"Q. But for something like four days before you had this accident you had been working along there, and watching, or seeing the process of pulling spikes, hadn't you? A. Yes.

"Q. When they told you to get the crow bar and start pulling spikes they didn't tell you how to do that? A. No.

"Q. You just knew how; you knew how to take that spike bar and work it? A. Anyone would know how to pull them.

"Q. You knew well how to pull the spikes, didn't you? A. Yes.

"Q. How many spikes, between the time you started and the time you were hurt, did the crow bar slip off of? A. Two.

"Q. Did it catch under any of the spikes and slip off like it did the last one? A. No."

On redirect examination by his counsel he further testified:

"Q. Did you examine that crow bar closely when you first picked it up? A. No.

"Q. Why didn't you examine it closely at the time you took it? A. They were getting behind in front pulling spikes and we were in a hurry.

"Q. Who was directing you to get on, if anyone? A. I don't know his name, but he is now supervisor at the Jacksboro bridge.

"Q. What was he doing at this time on this railroad? A. He was acting as assistant foreman.

"Q. About four days prior to this time, you said you had been knocking rocks from under the rails? A. Yes.

"Q. How far behind the men who were pulling spikes had you been? A. About a hundred yards.

"Q. How many men were pulling spikes? A. I don't know.

"Q. Did you see any of them hurt there, seriously? A. No.

"Q. Did you see any of their bars slip off? A. No.

"Q. Were you standing back there watching them, or were you knocking rocks from under the rails? A. I was working.

"Q. Had you watched them closely in their work? A. No."

At the conclusion of the testimony the court sustained defendant's motion for an instructed verdict in its favor, and plaintiff has appealed from a judgment in accordance therewith.

Since under plaintiff's pleadings he was employed as a laborer in work undertaken by the defendant in interstate commerce, the defense of assumed risks was available to the defendant; and as stated in his brief here that is the only issue involved in this appeal, and that defense is available under the Federal Employers' Liability Act, 45 U.S.C.A. § 54, which is controlling here.

In Missouri, K. & T. Railway Co. v. Hannig, 91 Tex. 347, 350, 43 S.W. 508, 510, this was said: "We understand the law to be that, when the servant enters the employment of the master, he has the right to rely upon the assumption that the machinery, tools, and appliances with which he is called upon to work are reasonably safe, and that the business is conducted in a reasonably safe manner. He is not required to use ordinary care to see whether this has been done or not. He does not assume the risks arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risks, or, in the ordinary discharge of his own duty, must necessarily have acquired the knowledge. Bonnet v. Railway Co., 89 Tex. 72, 33 S.W. 334; [Texas & N. O.] Railroad Co. v. Bingle [91 Tex. 287], 42 S.W. 971."

In Galveston, H. & S. A. R. Co. v. Lempe, 59 Tex. 19, this is said: "Where the servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon himself if he goes on with it."

That announcement was quoted and followed in Texas & Pac. R. Co. v. French, 86 Tex. 96, 23 S.W. 642.

We quote this from 29 Tex.Jur. par. 88, p. 157: "No duty rests upon the employer to warn experienced workmen of dangers ordinarily incident to the employment; but he is bound to warn them of latent and abnormal dangers of which he is aware but the workman is not."

That announcement is applicable to this case, notwithstanding plaintiff lacked some months of being 21 years of age, because his own testimony shows conclusively that the alleged defect in the crow-bar was patent and open to common observation, that it was known to him before and at the time of his injury, and that he was possessed of sufficient experience and discretion to understand and appreciate the risk of using it in that condition in the manner he was using it when he sustained the injury complained of. 39 C.J. par. 1016, p. 807; par. 1019, p. 810, and authorities there cited; 18 R.C.L. par. 172, p. 683. And in par. 177, beginning on page 691 of the same volume, this is said: "If the danger was fully appreciated there can be no recovery, whether the employee be youthful and inexperienced or otherwise. A minor employed as a servant assumes, to the same extent as an adult, the ordinary dangers and risks of his employment which he actually knows and appreciates, and those that are so apparent and open that one of his age, experience, and capacity would, in the exercise of ordinary care, know and appreciate them."

Many authorities are cited in the footnotes sustaining that announcement.

In Boldt v. Pennsylvania Railroad Co., 245 U.S. 441, 38 S.Ct. 139, 62 L.Ed. 385, it was said: "Under the Federal Employers' Liability Act, except in the cases specified in § 4 [45 U.S.C.A. § 54], the employee assumes extraordinary risks incident to his employment, and risks due to negligence of employer and fellow employees, when obvious or fully known and appreciated by him."

The case of Drake v. San Antonio & A. P. R. Co., 99 Tex. 240, 89 S.W. 407, Supreme Court, is the leading case relied on by appellant to support his contention that whether plaintiff assumed the risks of working with the crow-bar under the circumstances, should have been submitted to the jury. We believe it sufficient to say that the facts of that case distinguish it from the present suit. And that the same can be said of other decisions of like character cited.

Even though it be said that the evidence was sufficient prima facie to require submission of the issue of alleged negligence on the part of the defendant in furnishing the crow-bar for plaintiff's use, yet we believe it clear that plaintiff's own testimony conclusively established the defense of assumed risk as a matter of law and that the trial court did not err in instructing a verdict in favor of the defendant.

Accordingly, the judgment of the trial court is affirmed.

### On Motion for Rehearing.

Appellant complains of the conclusions reached on original hearing, that this case is distinguishable on the facts from the decisions cited in support of his assignments and particularly the decision of our Supreme Court in Drake v. San Antonio & A. P. R. Co., 99 Tex. 240, 89 S.W. 407, 408, and without pointing out the distinguishing facts.

We quote the following from the opinion in the Drake case:

"Plaintiff was a member of a section gang in the service of defendant under the immediate superintendence of a foreman. On the day when plaintiff was hurt the men were engaged in loading flat cars with steel rails, in doing which some of them stood on the ground and placed the rails upon skids, one end of which rested on the car, and pushed them along the skids until they reached the edge of the car, when they were received by two other employés, standing on the car, and put in place. In thus placing the rails, they were lifted or pulled by means of rail hooks, which were simple tools with a crook at one end, a handle at the other, and a stem about 20 inches long; the crooked end being inserted in the bolt holes in the rails. Plaintiff had been working on the ground until just before the accident, when he was ordered by the foreman to go upon the car and assist another in handling the rails. A rail hook had already been placed upon the car, and plaintiff took and used it in his work. After he had handled in the manner stated from three to five rails, the hook, because it was worn and was too small and not sufficiently curved, slipped from the hole in a rail as plaintiff was pulling upon it, whereby he was caused to

lose his balance and fall from the car, and suffer the injuries of which he complains. He had had previous experience in thus handling rails and in the use of such hooks, *but it does not appear that he knew of the presence of any defective ones. He testified that he did not notice the defective condition of the hook until he had fallen, when he examined it, and at once saw that it was in the condition stated. He was ordered by the foreman, when he went upon the car and continually while doing the work, to 'hurry up and get the rails out of the way,' and he says that he had no occasion to examine the hook—'had to pick it up as I came'—and thought it safe.* [Italics ours.] He admits, however, that he had to see the hook in inserting it in the bolt holes. He did not select the particular hook, but found it upon the car, where one was usually put for use when such work was being done, and he states that 'nobody knew anything about the hooks until he was on the car; he never climbed on the car with the hook; he found it up there.' This statement will be sufficient to indicate the questions of fact and law to be passed upon. * * *

"In the cases of Gulf, W. T. & P. R. Co. v. Smith [37 Tex.Civ.App. 188], 83 S.W. 719, Houston & T. C. R. Co. v. Scott (Tex. Civ.App.) 62 S.W. 1077, and many others that could be cited, it appeared that the plaintiff *either actually knew of the condition of the implement of which he complained, or that he had such opportunities of knowing as to conclusively show that he ought to have known.* [Italics ours.] Each case necessarily depends on its own facts, when the question is whether or not there is evidence to go to the jury, and a decision of the question upon one state of facts is usually of little help in a different case."

The court there held that the issues of defendant's negligence and assumed risk were for determination by the jury.

We believe the words italicized by us clearly distinguish that case from the instant case. Although, as shown by the testimony of plaintiff in this case, copied in our original opinion, he did not examine the crow-bar when he first picked it up, he knew of the alleged defect in it before he undertook to use it on the occasion it slipped from the spike and caused him to fall. And such knowledge on his part at the time brings the case within the decisions in Gulf, W. T. & P. R. Co. v. Smith, 37 Tex.Civ.App. 188, 83 S.W. 719, and

Houston & T. C. R. Co. v. Scott, Tex.Civ. App., 62 S.W. 1077, cited in the Drake case and recognized as announcing a correct rule when it appears that the "plaintiff either actually knew of the condition of the implement of which he complained, or that he had such opportunities of knowing as to conclusively show that he ought to have known."

Other authorities cited in appellant's brief include the following:

29 Tex.Jur. p. 314: "As we have already said, simple hand tools do not require periodic inspection, at least where they are continuously in the employee's custody. However, as we have also seen, an employee is not obliged to examine a hand tool furnished for his use, the doctrine of assumption of risk being applicable only to such defects as are obvious."

29 Tex.Jur. p. 152, announces it to be the duty of the master to furnish to the servant physical appliances reasonably safe for his use and the duty of warning employees generally of dangers where this duty exists. The following is a quotation from the opinion of the Supreme Court, in Galveston H. & H. R. Co. v. Hodnett, 106 Tex. 190, 163 S.W. 13, 15: "As most generally illustrated, assumption of the risk is the voluntary exposure of the servant, without remonstrance, to the ordinary hazards of the particular use of machinery or appliances, claimed by him to be defective or unfit, but of which condition and its dangers he knows, or must necessarily have acquired knowledge in the ordinary pursuit of his own duties. [Missouri, K. & T.] Railway Co. v. Hannig, 91 Tex. 347, 43 S.W. 508."

Winnsboro Cotton Oil Co. v. Carson, Tex.Civ.App., 185 S.W. 1002, 1007, was a suit by Carson for loss of a thumb, resulting from contact with the cogwheel of machinery, while engaged in the duties of his employment. In the opinion the foregoing announcement by the Supreme Court in the Hodnett case was quoted, followed by this conclusion:

"The proximate cause of appellee's injury was the defective box head, which, again waiving the issue of vice principal, *it was not his duty to keep in repair, and appellee's evidence not only tends to show, but the jury found, that he was without knowledge in that respect.* [Italics ours.] Further, 'there is on the servant no duty of inspection,' and he may in the pursuit of his work 'assume that the master has

done his duty and provided for him a safe place to work.' American Machinery Co. v. Haley, Tex.Civ.App., 165 S.W. 83, and cases cited. Accordingly we conclude that the issue of assumed risk was properly referred to the jury."

Peck v. Peck, 99 Tex. 10, 87 S.W. 248, opinion by Supreme Court, was a suit for damages resulting from an injury sustained while in defendant's employment, in which this was said:

"There is practically no conflict in the testimony. The plaintiff was hurt, while operating an elevator in defendant's furniture establishment, by having his arm caught between an iron bar across the side of the elevator and a block of wood fastened inside the shaft. The negligence is claimed to have consisted in having the block in such a position, or in allowing it to project so near the side of the elevator. The building was several stories high, and the block was fastened to a joist just under the second floor, where the elevator shaft passed through, and was about 22 inches long, 2 inches thick and projected from the joist 4 inches, and to within about 2 inches of the body of the elevator. The elevator was open on that side, having only an iron bar as a guard across it. The cables by which it was controlled were outside of and between it and the side of the shaft, and one of them, to hold it steadily in position, passed through the hole in the center of the block. Plaintiff was returning with the elevator from the top of the building, and, in order to regulate its movement, extended his hand outside and caught hold of this cable, when his elbow came in contact with the block, and was caught by the descending crossbar and injured. The evidence leaves no doubt that the block thus projecting so near to the elevator was a clumsy contrivance for the purpose for which it was intended, and the use of it was negligence, even if there was a necessity for anything to hold the cable at that point. Nothing of the kind was at the other floors or upon the other cable. *The chief contention is that plaintiff knew or ought to have known of its presence and of the danger it caused, and therefore assumed the risk or was guilty of negligence in exposing himself as he did. That he did not know of the fact the evidence is direct, and this court could only sustain the contention by holding, as matter of law, that the facts admit of no rational opinion but that he ought to have known it.* [Italics ours.] The

evidence shows, and plaintiff admits, that the block could have been seen by him from the elevator at any time when it passed that place, going up or down, had he looked for it, and that he had passed up and down many times each day for years, *but it also shows that neither he nor defendant nor another employé, all of whom had used the elevator in the same way and for a long time, had ever seen it before this accident.* * * * [Italics ours.]

"It is conceded that it was no part of plaintiff's duty to inspect or see to the condition of the elevator and its attachments."

The conclusion reached was in effect that whether or not plaintiff assumed the risk of his injury was for the jury, and citing and quoting the announcement above shown in Missouri, K. & T. Railway Co. v. Hannig, 91 Tex. 347, 350, 43 S.W. 508, as a correct statement of the rule of assumed risk.

Beaumont S. L. & W. R. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899, 901, was a suit for damages for injuries to plaintiff while employed by the defendant. His clothing was caught on a protruding nail in a shaft while an engine was in operation for pumping water into a tank. We quote the following from the opinion:

"Defendant in error had been employed at this station for about six and a half years and had operated the engine many times. He was a telegraph operator by trade and not a trained or experienced mechanic. Repairs necessary to be made on the pump and engine were made by plaintiff in error's water service repairman. *Defendant in error testified that at the time of his injury he did not know that the links extended farther out from the shaft when the engine was in gear, and did not know that there were nails in the pins holding the links together.* * * * [Italics ours.]

"Defendant in error was inexperienced in that he had never had any character of training that taught him about machinery or how to operate it. He was told not to oil the engine while it was running, but he was not warned of the particular, peculiar, and obscure danger in the combination of the flaring links and the protruding nails. In view of these facts, it is our opinion that there was evidence sufficient to warrant the submission to the jury of the issue of negligence in failing to warn defendant in error of the dangers that

might be encountered from the revolving clutch."

Then follows a general discussion of duties of the master to the servant with citation of numerous decisions.

In 29 Tex.Jur. p. 381, it is said that minors and inexperienced workmen are entitled in many instances to recover where recovery by an adult, experienced workman would not be sustainable.

In 29 Tex.Jur. p. 164, this is said: "But the law recognizes that a minor has not an adult's faculty for appreciating danger, and does not charge him with knowledge thereof unless it plainly appears that his injury resulted from a danger that was clearly perceptible by his immature faculties. In other words, assumption of risk is not a good defense where a minor has suffered injury if he did not know the extent of the danger or have sufficient discretion to weigh it. Hence the question whether he assumed the risk is almost always one of fact."

As a general rule, appellate courts do not review at length the many decisions cited by the losing party in the case, in order to distinguish them or the facts involved, because so to do unduly extends the opinion. For that reason we did not so do in our original opinion, but in view of the very earnest complaint of our failure in that respect, we have discussed practically all the authorities cited by appellant, and have found in them no reason to change the conclusions expressed in our original opinion.

 And in answer to the point stressed by appellant that because of his minority it was the exclusive province of the jury to determine whether he knew of the risk incident to working with the crow-bar, we deem it proper to refer to the decision of the Court of Appeals in Houston & T. C. R. Co. v. Scott, Tex.Civ.App., 62 S.W. 1077, cited with implied approval in the Drake case, in which it was held that Scott, the plaintiff, assumed the risk of his injury, for which he sought a recovery, although he was a minor, 19½ years of age, when injured. At the time of his injury, he was working on a gravel decked bridge, nipping ties to which rails were being spiked. The work was done by putting a crow-bar under the end of a tie and raising it up to the rail against which it was held while two other men spiked the rail to it. While pressing down on the crow-bar, it slipped loose from its hold under the tie and plaintiff fell over the edge of the bridge to the bed of the creek below, about 30 feet, and was injured. It appeared that he had worked as a section hand on the railroad and was familiar with the work of nipping ties. In the opinion this was said: "The claw bar used by the plaintiff was furnished by defendant. It was worn at the end so that the hold on the tie would slip more easily than if the edges and points had been sharp and unworn, but plaintiff knew of the worn condition of the claw bar when he was using it. * * * [Italics ours.] He knew that the work was dangerous, and that, if his claw bar slipped, he would be apt to fall over the edge of the bridge to the bed of the creek below. * * * The case is a plain one of the assumption of risk. The plaintiff, although a minor, appeared to be fully aware of the dangerous character of the work, and was not so lacking in experience as not to be able to understand it." (Italics ours.) In support of that holding, the court cited Texas & P. Railway Co. v. French, 86 Tex. 96, 23 S.W. 642; Galveston, H. & S. A. Railway Co. v. Lempe, 59 Tex. 19, 22.

Accordingly, appellant's motion for rehearing is overruled.