ABLON v. ELECTRIC EXPRESS & BAG-
GAGE CO. (No. 7918.)

(Court of Civil Appeals of Texas. Dallas. Oct.
19, 1918. Rehearing Denied Nov.
16, 1918.)

1. APPEAL AND ERROR ☞209(1)—REVIEW—
SUFFICIENCY OF EVIDENCE—OBJECTION IN
MOTION FOR NEW TRIAL.

Even were the articles of the statute (Vernon's Sayles' Ann. Civ. St. 1914, arts. 1970–1974, 2061) relating to the filing of objections and exceptions to giving and refusing of charges applicable when case is submitted on special issues, sufficiency of evidence to support a finding is an open question on appeal, not waived by submission without objection, having been made ground of motion for new trial.

2. CARRIERS ☞347(6) — RIDING ON EXPRESS
WAGON—CONTRIBUTORY NEGLIGENCE.

Evidence in action for injury to minor son of consignee of express from being thrown from top of load, when driver ran express wagon into telephone pole, held insufficient to go to jury on issue of contributory negligence in not having hold on wagon.

3. CARRIERS ☞331(1)—RIDING ON EXPRESS
WAGON—CONTRIBUTORY NEGLIGENCE.

Son of consignee of express, injured by being thrown when driver ran express wagon into telephone pole, held not negligent in riding on top crates of turkeys; he being strong and heavy and having firm grasp on wagon.

4. CARRIERS ☞331(1)—INJURY TO PERSON
RIDING ON EXPRESS WAGON — CONTRIBU-
TORY NEGLIGENCE.

Contributory negligence of son of consignee of express, who, having assisted the driver load the turkey crates on the express wagon, was,

while riding, thrown off when wagon was run into telephone pole, could not be predicated on his not passing a rope round the crates, or not raising the rear end gate; it not having been his duty to do so.

5. NEGLIGENCE ☞136(5) — QUESTION FOR
JURY—SUBSTANTIAL EVIDENCE.

While ordinarily negligence is a question for the jury, this is true only when there is substantial evidence tending to establish it. A scintilla of evidence, or such as raises a mere surmise or suspicion, is not enough.

6. CARRIERS ☞339—EXPRESS COMPANY—IN-
JURY TO PERSON RIDING ON WAGON—CON-
TRIBUTORY NEGLIGENCE.

In action for injury to son of consignee of express, thrown while riding on top of load, when driver ran express wagon into telephone pole, any act claimed to have been contributory negligence held not proximate cause of the injury.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by Morris Ablon, by next friend, against the Electric Express & Baggage Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Etheridge, McCormick & Bromberg, of Dallas, for appellant.

Harry P. Lawther, of Dallas, for appellee.

TALBOT, J. The appellant, a minor about 18 years of age, sued by his father, as next friend, to recover of appellee damages sustained as the result of personal injuries alleged to have been received by him through the negligence of a driver of an express wagon of appellee while transporting over the streets of Dallas several coops of turkeys. The negligence alleged was driving the two horses hitched to the wagon at a greater rate of speed than permitted by an ordinance of the city, and as a consequence a collision of the vehicle with a telephone post in the curb at or near a street intersection, thereby throwing the appellant, who was sitting on the coops, to the brick pavement with such force that his right hand, arm, shoulder, and leg were seriously injured. The defenses were a general demurrer, a denial that the driver was in the employ of appellant at the time of the accident, a denial that he was driving in excess of the speed limit prescribed by the city ordinance, and that appellant was guilty of contributory negligence. The appellant was charged with contributory negligence: (1) In that he negligently took his seat at the rear end of the wagon in question, upon the top of the coops or crates of turkeys, which had been loaded in the end of said wagon, sitting upon them sideways while in transit; (2) that in loading the wagon and adjusting the endgate thereof appellant negligently failed to raise the endgate at an angle, so that the crates which were put in the end of the wagon would be on an incline towards the wagon, but carelessly allowed "said endgate to rest upon a level, the level being lower than the bottom of the wagon,

which permitted said crates to work to the rear as the wagon was being driven over the streets"; (3) that appellant failed to fasten the crates to the wagon with a rope; (4) that, if the driver of the wagon was driving at too great a rate of speed, the same was known to appellant, and appellant failed to make any objection thereto, and "negligently failed to direct the driver of the wagon to go slower"; (5) that appellant was so situated upon the top of the crates at the rear of the wagon "that he could have held himself on simply by grasping with one hand the stave at the corner of the wagon, but that at the time of the collision with the telephone pole" he had either negligently failed to grasp the stave and top of the wagon, or negligently upon said collision jumped from his place on the wagon to the pavement below. It was further alleged that the striking of the telephone pole was an accident not reasonably to have been foreseen as the probable result of the acts of the driver of the wagon.

The case was submitted to the jury on special issues, and all of them, except issue No. 3, were answered favorably to the appellant. The jury found, among other things which we deem unnecessary to state, that the driver of the wagon, Leggett, was guilty of negligence as charged in the plaintiff's petition, and that his negligence was the proximate cause of the injury sustained by appellant; that the driver, Leggett, delivered the turkeys in question in the course of his employment with the appellee and at the instance of appellee. Issue No. 3 was as follows:

"Was the plaintiff, Morris Ablon, guilty of negligence proximately causing or contributing to said injuries?"

To this question the jury answered "Yes," and upon motion of the defendant, appellee here, judgment was rendered in its favor. Appellant's motion for a new trial having been overruled, he perfected an appeal to this court.

[1] The assignments of error from the first to the eleventh, inclusive, are grouped in the brief, and challenge the sufficiency of the evidence to support the jury's finding on issue No. 3, which finding, as we have seen, is that appellant, Morris Ablon, was guilty of negligence proximately causing or contributing to the injuries sustained by him. The appellee objects to a consideration of these assignments on the ground that as the case was submitted upon special issues, and the appellant made and filed no objections to the submission of the issue of contributory negligence, "he waived any objections to the insufficiency of the proof upon that issue." In support of this contention appellees cites articles 1970, 1971, 1973, 1974, and 2061, Vernon's Sayles' Ann. Civil Statutes 1914. We do not believe the objections are well taken, and the assignments of error will be considered. By motion for a new trial filed in the district court appellant com-

plained of the insufficiency of the evidence to support the jury's finding on the question of contributory negligence, and asked that such finding be set aside and a new trial ordered. This we think entitles appellant to a consideration of the assignments of error (which were the assignments in his motion for a new trial), and a review by this court of the sufficiency of the evidence to support the finding in question. To this effect is the ruling of this court in 'Winnsboro Cotton Oil Co. v. Carson, 185 S. W. 1002. See, also, Railway Co. v. Black, 176 S. W. 755. Besides, this court has held, in effect, that the articles of the statute relating to the filing of objections and exceptions to the giving and refusing of charges, when the case is submitted on a general charge, do not apply, when the case is submitted on special issues, to the giving of such issues. Shaw v. Garrison, 174 S. W. 942. In that case it was said, in substance, that submitting special issues of fact for the determination of the jury, or refusing such submission, is in no sense the giving or refusing to give a special charge, and hence in no respect controlled by the particular provisions of the amended statute of the Thirty-Third Legislature (Acts 33d Leg. c. 59).

The appellee's plea of contributory negligence, as we have shown, was based on several alleged grounds of negligence on the part of the appellant; but it cannot be told from the record before us whether the jury believed and found that appellant was guilty of such negligence in all, or only in some one or more, of the particulars charged, and, if only in some one of the particulars charged, which one. They were simply asked, "Was the plaintiff, Morris Ablon, guilty of negligence proximately causing or contributing to his injuries?" And they answered, "Yes." By separate and specific propositions, made under the assignments of error we are considering, appellant insists, in effect, that the trial court should have set aside the finding of the jury on the question of contributory negligence, because reasonable minds, considering all of the testimony in the case, could not differ as to the ultimate fact that the appellant, Morris Ablon, was free of negligence in either of the several particulars charged, which have been stated in a former part of this opinion, and would necessarily have reached the conclusion that he was free of any negligence whatever proximately causing or contributing to the injuries which the jury found he sustained. The jury found, upon testimony warranting it, that Leggett, the driver of the wagon in question, was in the employ of and under the control of the appellee at the time of the accident resulting in injury to Morris Ablon, and that the delivery of the coops of turkeys loaded on the wagon was being made by him at the instance of and under the direction of his employer. The question, then, for our determination, is:

Does the testimony conclusively show that appellant was not guilty of negligence in any of the particulars charged which proximately caused or contributed to his injuries?

We have carefully read and re-read all of the testimony in the record bearing upon the question, and have reached the conclusion that the question must be answered in the affirmative. The testimony bearing upon the question of contributory negligence is that of the appellant, Morris Ablon, and the driver of the wagon, L. J. Leggett. It is too voluminous to be copied in detail in this opinion; therefore only so much of it as we deem necessary to show the correctness of our conclusion will be copied or stated. The father of Morris Ablon, the appellant, was anxious to have the turkeys delivered to him on the night of the accident. They came in on the train too late to be delivered by the appellee during the usual and customary hours of making deliveries by it. They had no one to assist Leggett, the driver of the wagon, to load the coops of turkeys on the wagon, and to supply such assistance Morris Ablon's father sent him with Leggett to help load the wagon. According to the testimony of Morris Ablon, 13 crates of turkeys were placed on the wagon, and according to the testimony of Leggett, the driver, "somewhere between 14 and 17 crates." The wagon was a big one; the bed being about 12 or 15 feet long and 4 or 5 feet wide. It had a top on it, and four standards, one at each corner, going up to support the top. The side walls of the wagon bed came straight up from the floor for about 15 inches, and then there were outflaring extensions, called wings, which were braced with iron rods. There was an endgate to the wagon bed, about 15 inches wide, which could be so adjusted with a chain as to be made level with, or higher or lower than, the wagon bed. On the day of the accident this endgate was about level with the wagon bed proper. The wagon at this time was being drawn by the two large draft horses, weighing about 1,800 pounds each. The coops or crates of turkeys were about 3½ feet long by a little over 2 feet wide by about 1½ feet high. With the turkeys in them they weighed between 150 and 250 pounds. The appellant testified that the coops or crates were loaded on the wagon as follows:

"We put 13 coops on that load. I think we put one layer in the bottom of the wagon lengthwise, and on the wing two high, or something like 6 coops on the wing. The wagon had an endgate I expect a foot and three inches wide. It wasn't quite level with the coops on the wagon. It was just the least little bit lower than the level of the wagon. * * * The coops were almost all the way in the wagon. Just a little part of one coop was on the tailgate. We put one coop in the bottom and then started to wing them."

Leggett described the loading of the crates on the wagon as follows:

"I winged some of them on the side and put them on behind; winged them on behind on the endgate of the wagon. I put one on the endgate and stacked them three high. I stacked them two high on the sides and two on the bottom."

After the coops were loaded on the wagon, Leggett got on the seat in front and drove the team, and the appellant, Morris Ablon, according to his testimony, got on top of the two last coops toward the rear of the wagon, and sat on them with his shoulder up about level with the cover of the top of the wagon. He was sitting on the level coops, with his right hand holding onto one of the staves supporting the wagon top, and with his left hand holding to the top of the wagon. In this position he continued until the time of the collision of the wagon with the telephone post. He was a strong boy, between 17 and 18 years, and weighing in the neighborhood of 220 pounds. He was not sitting on one of the inclined coops, but the coop or coops on which he was sitting were straight and level. Both Ablon and Leggett testified that the coop or coops the appellant Ablon was sitting on, were level, and that he was in such position that he could hold onto the wagon top. The appellant says in reference to his taking this position that the driver Leggett said to him: "You get on the back and kind of keep your eye on the coops." Leggett said, on direct examination in this connection:

"Morris Ablon sat on the rear end of the top of the coops. I don't know why he did that unless it was to watch them. I did not direct him to sit back there to watch them, and, if he said why he sat there, I don't remember it."

On cross-examination, however, he said:

"I do not remember that Morris Ablon and I had a conversation when we started out about one of us riding in front and the other behind. I am not positive whether we did or did not have such a conversation. It could be possible that I told him to ride on behind and keep a watch on the coops, but I do not think I told him anything like that."

That the wagon was properly loaded is not disputed. Ablon says that he assisted Leggett in loading the wagon and that it was loaded properly; that it was loaded the way he would have loaded it himself, but that he did not tell Leggett how to load it. He further said that Leggett whipped his horses and went up the street at the rate of 12 or 15 miles an hour; that he was going at a pretty good gait; that when he turned the corner at Elm and Market streets he hit a telephone post, and threw him (appellant) off the wagon, with two or more coops of turkeys; that he could hardly tell what part of the wagon hit the post, but that the second coop on the wagon must have hit the post; that, the coops being winged out, they hit it; that as soon as the post was hit it knocked him off, with two of the coops, and that he was then holding onto the wagon top. As a result of being knocked or thrown from the wagon, one of his arms was broken and he was otherwise injured. Leggett testified that he did not turn the corner at Elm and Market

streets driving in a trot; that he had the horses in a walk as he turned that corner; that one of the front coops hit a post, and whether it knocked the back coops off, or whether they were jarred off, he did not know; that it was one of the front coops that hit the post, one in front of the stave. He, at another place, said:

"It was one of the coops up in the front end of the wagon that hit the post which hit the coop next to it, and that knocked these two behind it off."

He further said that the coops which fell off "were not put in the wagon endways; that they were put in across the endboard and loaded straight up." At the time of the accident Leggett, the driver, was not looking at the appellant nor the coops. He was looking straight in front.

[2, 3] The foregoing constitutes in substance all the material testimony touching the charges of contributory negligence on the part of the appellant, Morris Ablon, and fails in our opinion to authorize a finding that appellant was guilty of such negligence in either of the particulars alleged. There is no contradiction of appellant's testimony that at the time the telephone post was struck, and he was thrown from the wagon, he was firmly holding onto the staves supporting the wagon top and to the top itself, and, as argued by counsel for appellant, for a boy between 17 and 18 years of age to take his seat on the top of the coops, as the proof shows he did, laying one on top of the other flat on the bottom of a large two-horse wagon, with a firm grasp on the staves and top of the wagon while the same was being driven along a street of the city of Dallas, which was paved, he being strong, healthy, and weighing more than 200 pounds, the coops each weighing from 150 to 250 pounds, and lying flat on the level bottom of the wagon bed, extending at most only a few inches beyond the endgate of the wagon, which was securely fastened to the wagon while it was to be driven along paved streets of a city, furnishes no basis for and inference of negligence on his part.

Especially does it occur to us that there is absolutely nothing in the testimony now before us that would authorize a finding that the doing or failure to do either of the acts or things upon which the plea of contributory negligence is based proximately caused the injuries sustained by the appellant. The jury found that the proximate cause of the accident and appellant's injuries was the negligence of the driver of the wagon, Leggett, and we think the undisputed evidence clearly shows that the sole proximate cause of the accident and injury sustained by appellant was due to the driver's negligence. There is nothing to indicate that appellant, or either of the coops, would have fallen or been thrown from the wagon, if the driver had not negligently struck the telephone post. Ablon said, "I took my position where he [Leggett] told me," and without contradiction said, "and it was safe." Appellant could not reasonably have foreseen or anticipated, when he assumed his position on the coops, that Leggett, the driver, would carelessly and negligently, while driving along the streets, run his loaded wagon into a telephone post set in the sidewalk, so as to strike one of the winged-out coops against it, and with a violence sufficient for the impact to knock the coop on which he was sitting off the wagon; nor could he, in our opinion, have anticipated or foreseen that any similar or like accident might have occurred from the acts of the driver.

[4] Contributory negligence, under the testimony in the record, could not be predicated upon the failure of the appellant to pass a rope around the crates, nor for the failure to properly adjust the endgate. He merely assisted in loading the wagon. The wagon and team belonged to appellee. Leggett, the driver, was the employé of the appellee, and it was his duty to do whatever was necessary to prevent the coops from falling off the wagon. The manner in which they were placed on it was not a sufficient guaranty that they probably would not fall off. Besides, no rope was furnished appellant to be used in fastening the coops to the wagon, nor does it appear that a rope was customarily used for that purpose with the knowledge of appellant. Likewise, it was not a duty resting upon appellant to raise the endgate at an angle, so that the crates or coops which were put in the rear end of the wagon bed would be on an incline towards the wagon. Furthermore it conclusively appears that neither the failure to adjust the endgate, as appellee claims it should have been adjusted, nor the failure to tie the coops onto the wagon bed, proximately caused or contributed to appellant's injuries. In reference to the charges that appellant negligently failed to make any objection to the rate of speed at which the driver was going, and negligently failed to direct him to go slower, and that appellant negligently failed to hold onto the stave supporting the wagon top, and to the top itself, or jumped from the wagon, it is sufficient to say that the undisputed evidence shows that appellant did say to the driver, "You are going too fast," thereby impliedly requesting him to drive slower, and that at the time the accident occurred he had hold of the wagon top, and of the stave supporting it, and that he was thrown to the pavement, and did not jump. Besides, we do not think the failure of appellant to request the driver to drive slower, if he did fail to make such request, subjected him to a charge of contributory negligence.

[5, 6] We, of course, recognize the rule that ordinarily negligence is a question for the jury; but this is true only when there is substantial evidence tending to establish negligence. This means more than scintilla

of evidence. Testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, amounts practically to no evidence. Construing the evidence shown by the statement of facts in the present case as favorably in behalf of appellee as it is entitled to have the same so construed, it does not, in our opinion, authorize the conclusion that the appellant failed to exercise ordinary care in respect to any of the particulars declared in appellee's pleadings; but, if we are mistaken in this, then we think it clear that the evidence shows that any act or omission alleged by appellee to constitute contributory negligence must necessarily have been remote, and could not have been the proximate cause of appellant's injury.

The views expressed render it unnecessary to consider the assignments of error relating to misconduct of the jury.

For reasons indicated, the judgment of the court below is reversed, and the cause remanded.